**UNITED STATES of America, Appellee,**

v.

**Premnath BIRBAL, also known as Winston, and John T. Wright, Defendants–Appellants.**

**Nos. 712, 1212, Dockets 94–1320, 94–1461.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1995.

Decided Aug. 2, 1995.

Steven M. Statsinger, New York City (Henriette D. Hoffman, The Legal Aid Society, Federal Defender Div., of counsel), for defendant-appellant Birbal.

Kevin P. Candon, Rutland, VT, for defendant-appellant Wright.

Gary G. Shattuck, Asst. U.S. Atty., Rutland, VT (Charles R. Tetzlaff, U.S. Atty., David V. Kirby, Chief, Crim. Div., of counsel), for appellee.

Before: OAKES, MINER and JACOBS, Circuit Judges.

OAKES, Senior Circuit Judge:

This appeal requires us to address one of the most ancient and time-honored aspects of our criminal justice system, although perhaps one of the least susceptible to verbal formulation—the requirement of proof beyond a reasonable doubt. Premnath Birbal and John Wright appeal from judgments of conviction entered on May 23, 1994, and August 15, 1994, respectively, following a jury trial in the United States District Court for the District of Vermont (Franklin S. Billings, Jr., J.). The jury found both defendants guilty of

conspiring to distribute heroin in violation of 21 U.S.C. § 846, of distributing heroin and cocaine in violation of 21 U.S.C. § 841, and of traveling to promote unlawful activity, in violation of 18 U.S.C. § 1952. The district court sentenced Birbal to 12 months' imprisonment and Wright to 92 months' imprisonment, with both prison terms to be followed by a three-year term of supervised release.

Birbal and Wright contend, *inter alia*, that their convictions should be overturned because the district court instructed the jury erroneously on the issue of reasonable doubt. We agree, and accordingly we reverse both judgments of conviction. Because we reverse on this ground, we need not address the host of other contentions raised by appellants. We write briefly, however, to address two contentions raised by Birbal which remain relevant on retrial: that the district court erred in denying his *in limine* motion to exclude prejudicial testimony about the death by heroin overdose of one of his customers, Peter Buckley, and that it erred as well in failing to dismiss portions of the indictment on double jeopardy grounds. As discussed below, we find these contentions without merit.

## BACKGROUND

On July 20, 1991, Peter Buckley, a resident of Pawlet, Vermont, died in his home of a heroin overdose shortly after being visited by Birbal and Wright. An extensive police and grand jury investigation ensued in order to determine whether Birbal and Wright had supplied the heroin that killed Buckley. In June 1992, during the course of the investigation but before any indictment was rendered, Birbal was arrested for possessing cocaine with intent to distribute and for destroying evidence by flushing cocaine down a toilet as police executed a search warrant in his home. Birbal was tried and convicted of these offenses in October 1992 (the "cocaine case").

In December 1992, while Birbal was awaiting sentencing in the cocaine case, the investigation into Buckley's death concluded, and Birbal and Wright were indicted for supplying the heroin that killed Buckley. The indictment charged the defendants with: (1) conspiring between 1989 and July 20, 1991, to distribute and possess with intent to distribute heroin, cocaine, and marijuana; (2) distributing heroin to Buckley on numerous occasions from 1989 through 1991, including July 20, 1991, the date of Buckley's death; (3) traveling in interstate commerce between 1989 and 1991 for the purpose of facilitating an unlawful activity (distribution of heroin and cocaine); and (4) distributing heroin, marijuana, and cocaine between 1989 and 1991 to a man named Lawrence Stoddard.

Before trial, the district court denied Birbal's motion to preclude the government from introducing any evidence relating to Buckley's death. On November 8, 1993, following a five-day jury trial, both Birbal and Wright were convicted on all four counts.

## DISCUSSION

### I. The Jury Instruction on "Reasonable Doubt"

Birbal and Wright contend that their convictions should be reversed because the district court's jury instructions on reasonable doubt, the presumption of innocence, and the government's burden of proof were so deficient as to violate due process. *See Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In his written request to charge, Birbal asked that the district court deliver the instruction on reasonable doubt provided in 1 Leonard B. Sand, *et al.*, *Modern Federal Jury Instructions* No. 4–2 (1993). That instruction states:

I have said that the government must prove the defendant guilty beyond a reasonable doubt. The question naturally is what is a reasonable doubt? The words almost define themselves. It is a doubt based upon reason and common sense. It is a doubt that a reasonable person has after carefully weighing all of the evidence. It is a doubt which would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must,

therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs. A reasonable doubt is not a caprice or whim; it is not a speculation or suspicion. It is not an excuse to avoid the performance of an unpleasant duty. And it is not sympathy.

In addition, Birbal requested the charge on the presumption of innocence and burden of proof provided in Instruction No. 4–1 of *Modern Federal Jury Instructions,* which states, in part, "If the government fails to sustain its burden you must find the defendant not guilty."

Instead, the court gave the following instructions:

> In a criminal case, the government has the burden of proving each element of the charges against the defendants beyond a reasonable doubt. You cannot find the defendants guilty unless the government has met this burden of proof.
>
> To support a verdict of guilty, **you need not find every fact beyond a reasonable doubt.** You need only find that the government has established by the evidence and beyond a reasonable doubt each and every essential element of the crimes charged. A reasonable doubt is a fair doubt, based upon the application of reason and common sense to the evidence presented.
>
> The law does not require proof that overcomes all possible doubt, so **a reasonable doubt means only a substantial doubt.** Similarly, beyond a reasonable doubt does not mean no doubt. A reasonable doubt may arise either from the evidence presented or from the lack of evidence presented.
>
> . . . .

> The law presumes that a defendant is innocent of the charges against him. The presumption of innocence lasts throughout the trial and ends only if you, the jury, find beyond a reasonable doubt that the defendant is guilty. Should the prosecution fail to prove the guilt of a defendant beyond a reasonable doubt, you **may** acquit the defendant on the basis of the presumption of innocence.

Transcript of proceedings, IV–86–88 (emphasis added).

 Although appellants requested the standard jury instructions on reasonable doubt, the presumption of innocence, and the burden of proof, they did not specifically object to the district court's alternative instruction at the time it was given, as Fed. R.Crim.P. 30 requires. Accordingly, we review the court's instructions for plain error, under Rule 52(b). *United States v. Locascio,* 6 F.3d 924, 942 (2d Cir.1993), *cert. denied,* —— U.S. ——, ——, 114 S.Ct. 1645, 1646, 128 L.Ed.2d 365 (1994); *see also United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).[1]

As appellants note, this is not the first occasion we have had to examine this particular jury instruction. The reasonable-doubt instruction in this case is the same charge, word for word, which the very same judge employed and which this court examined and found wanting in *United States v. Delibac,* 925 F.2d 610, 614 (2d Cir.1991) (per curiam)—with the addition that in this case we review as well the final paragraph above concerning the presumption of innocence and the burden of proof.

In *Delibac,* we commented that "[o]nce again, a district court has failed to heed our repeated warnings against embellishing upon the standard instruction recommended in 1

---

1. Although defendants' failure to object requires us to review the court's jury charge for plain error only, it should be noted that defendants' opportunity to discern specific flaws in the jury instructions was limited by Judge Billings' practice of not providing counsel with written copies of his instructions before reading them. *See* Brief for the United States, at 45 n. 15. As the government correctly notes, "It is difficult to catch the use of a slightly modified reasonable doubt charge … simply by hearing it." *Id.* To prevent exactly this problem, many, if not most, district judges in this circuit routinely provide counsel with written copies of their jury instructions in advance of reading them to the jury, thereby giving counsel adequate opportunity to register their objections. In order that errors may be corrected, where possible, before they infect the jury, we strongly encourage those judges who do not already do so to follow this practice.

460

Devitt & Blackmar, Federal Jury Practice and Instructions." *Id.* (citing *United States v. Gatzonis,* 805 F.2d 72, 74 (2d Cir.1986) (per curiam), *cert. denied,* 484 U.S. 932, 108 S.Ct. 303, 98 L.Ed.2d 262 (1987); *United States v. Viafara–Rodriguez,* 729 F.2d 912, 913–14 (2d Cir.1984); *United States·v. Ivic,* 700 F.2d 51, 69 (2d Cir.1983)). We concluded that the court's instruction "creates three problems":

> First, the charge failed to instruct the jurors that proof beyond a reasonable doubt is "proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs." Second, the charge equated "reasonable" doubt with "substantial" doubt—an unenlightening instruction that we have only "tolerated." Finally, the charge advised the jury that "to support a verdict of guilty, you need not find every fact beyond a reasonable doubt." While we have noted that, as an abstract proposition, this instruction is a correct statement of the law, we have also advised that in an instruction to a jury it is probably confusing and certainly·unnecessary.

*Id.* (citations omitted).

Having found the charge deficient, however, we upheld it, stating:

> Although we find it necessary to "state our views on this issue" again, we are nevertheless satisfied that the charge taken as a whole adequately conveys the concept of reasonable doubt and does not constitute plain error.

*Id.* (citations omitted).

■ We do not reach the same conclusion this time. The court's charge, which of course remains deficient for the three reasons enumerated in *Delibac,* contains an additional, and more serious, error which we did not examine in that case—one which, when added to the already catalogued litany of errors, pushes the charge over the line into plain error. This is the court's erroneous instruction on the burden of proof: "Should the prosecution fail to prove the guilt of a defendant beyond a reasonable doubt, you *may* acquit the defendant on the basis of the presumption of innocence."

·■ As noted above, the standard instruction informs the jury that "If the government fails to sustain its burden you *must* find the defendant not guilty." Sand, No. 4–1 (emphasis added); Devitt & Blackmar, § 11.14 (emphasis added). This instruction, unlike much of the suggested language in the various pattern instructions, is not optional. *Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 2789 n. 14, 61 L.Ed.2d 560 (1979). To the contrary, it expresses one of the central and most cherished principles of our criminal law, one that has been called "basic in our law and rightly one of the boasts of a free society," *In re Winship,* 397 U.S. 358, 362, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970) (quoting *Leland v. Oregon,* 343 U.S. 790, 802–03, 72 S.Ct. 1002, 1009, 96 L.Ed. 1302 (1952) (Frankfurter, *J.,* dissenting))—that each defendant is presumed innocent, and that this presumption mandates a judgment of acquittal unless the government entirely rebuts it with proof of guilt beyond a reasonable doubt. By instructing the jury that it "may," rather than "must," acquit if the government failed to meet this burden, the court gave the jury the clearly unlawful option of convicting on a lower standard of proof.

This erroneous instruction, coming as it did at the end of the court's instructions on reasonable doubt, was, we think, only partially ameliorated by the court's correct instruction, several sentences earlier, that "You cannot find the defendants guilty unless the government has met [its] burden of proof." At best, these two conflicting instructions, when added to the deficiencies catalogued in *Delibac,* must have left the jury uncertain of the standard it was charged with applying. Such a jury, it goes without saying, was insufficiently prepared to carry out its constitutional mandate to resolve all reasonable doubts before adjudging the defendants guilty. *See Jackson,* 443 U.S. at 320 n. 14, 99 S.Ct. at 2789 n. 14 ("a defendant whose guilt was actually proved by overwhelming evidence would be denied due process if the jury was instructed that he could be found guilty on a mere preponderance of the evidence").

Our conclusion, we should note, is informed by several recent Supreme Court opinions which have been handed down since *Delibac,* which somewhat modify our review of reasonable-doubt instructions and their relation to the plain error rule—*United States v. Olano,* — U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), *Sullivan v. Louisiana,* — U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), and *Victor v. Nebraska,* — U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).

In *Olano,* the Supreme Court set out the three elements required to reverse a conviction under the "plain error" standard of Fed. R.Crim.P. 52(b): (1) there must be an "error"; (2) it must be "clear" or "obvious"; and (3) it must "affec[t] substantial rights," which "in most cases ... means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Olano,* — U.S. at —— - ——, 113 S.Ct. at 1777–78. If an error meets these requirements, a court of appeals "has authority to order correction, but is not required to do so." *Id.* at ——, 113 S.Ct. at 1778. The applicable test is whether the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ——, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 391, 80 L.Ed. 555 (1936)). The Court left open the issue whether "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome." *Id.* at ——, 113 S.Ct. at 1778.

In *Sullivan,* however, the Court held that a constitutionally deficient reasonable-doubt instruction can never be harmless error. This is so because, by instructing the jury erroneously on its burden of proof, the court deprives the defendant of his right, under the Fifth and Sixth Amendments, to have a jury rather than a judge reach the conclusion that he is guilty beyond a reasonable doubt. *Sullivan,* — U.S. —— - ——, 113 S.Ct. at 2081–83. Thus, when the trial court has seriously misdescribed the reasonable-doubt standard, "there has been no jury verdict within the meaning of the Sixth Amendment," and no amount of "appellate speculation about a hypothetical jury's action" can remedy this error. *Id.* at ——, 113 S.Ct. at 2082.

Although *Sullivan* concerned harmless-error rather than plain-error analysis, its reasoning "applies with equal force in the plain error context:"

> [W]here the error consists of a misdescription of the reasonable doubt standard, the court cannot assess the impact of the error on the outcome of the trial because there has been no jury finding of guilt beyond a reasonable doubt in the first instance. The fact that the burden of proof shifts in plain error cases is of no import here, as the analytical task of the reviewing court remains the same.

*United States v. Merlos,* 8 F.3d 48, 51 (D.C.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994); *see also United States v. Colon–Pagan,* 1 F.3d 80, 81–82 (1st Cir.1993) (Breyer, J.) (applying *Sullivan* to plain error case).

█ Thus, where a jury instruction on reasonable doubt is constitutionally deficient, prejudice may be presumed, and we need not assess whether the instruction affected the outcome of the trial. We may also presume that, by its nature, the erroneous instruction " 'seriously' affected the 'fairness, integrity or public reputation of judicial proceedings,' " as a constitutionally deficient reasonable-doubt instruction is a " 'structural defect[ ] in the constitution of the trial mechanism.' " *Colon–Pagan,* 1 F.3d at 82 (quoting *Olano,* — U.S. at ——, 113 S.Ct. at 1779, and *Sullivan,* — U.S. at ——, 113 S.Ct. at 2082).

In *Victor v. Nebraska,* — U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), the Court clarified the appropriate inquiry to determine whether a reasonable-doubt instruction *is* constitutionally deficient. It noted first that although the reasonable-doubt standard is an "ancient and honored aspect of our criminal justice system" and is required by due process, *see Winship,* 397 U.S. 358, 90 S.Ct. 1068, the standard "defies easy explication":

> [T]he Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a rea-

sonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

*Victor,* —— U.S. at ————————, 114 S.Ct. at 1242–43 (citations and internal quotations omitted). Accordingly, the Court stated, the question for the reviewing court becomes "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard," *i.e.*, that the government must prove beyond a reasonable doubt every element of a charged offense. *Id.* at ——, 114 S.Ct. at 1243.

Applying this standard, the Court upheld a reasonable-doubt instruction which, as in this case, equated reasonable doubt with "substantial doubt." The Court noted that, although use of this phrase is "somewhat problematic," it had never found "that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional." *Id.* at ——, 114 S.Ct. at 1250. Rather, in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam) (decided before *Delibac*), the Court had found unconstitutional a charge which described a reasonable doubt not only as "an actual substantial doubt" but also as "such doubt as would give rise to a grave uncertainty"—a combination which, the *Victor* Court reasoned, led to "an overstatement of the doubt necessary to acquit." *Victor,* —— U.S. at ——, 114 S.Ct. at 1250. In contrast, in the *Victor* jury charge, the Court found the reference to a "substantial doubt" to be remedied by other language which preceded and followed the problematic phrase. First, the instruction distinguished "an actual and substantial doubt" from a doubt "arising from mere possibility, from bare imagination, or from fanciful conjecture"—a distinction which, the Court reasoned, "makes clear that 'substantial' is used in the sense of existence rather than magnitude of the doubt." *Id.* Second, the instruction included an alternative definition of reasonable doubt which the Court found to be a "common-sense benchmark": "such a doubt as would cause a rea-

sonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon." *Id.* at ——, 114 S.Ct. at 1249–50.

■ Following *Victor* and *Sullivan,* we employ an inquiry somewhat modified from the plain-error analysis employed in *Delibac,* and we ask simply whether, taking the jury instructions as a whole, there is a "reasonable likelihood" that the jury understood the instructions to allow conviction based on insufficient proof.

The jury instruction before us does not suffer from the defect which the *Cage* Court found fatal—the combination of the phrases "substantial doubt" and "grave uncertainty." On the other hand, neither does it benefit from any of the curative language which, in *Victor,* ameliorated the reference to "substantial doubt." Certainly, the court's description of a reasonable doubt as a "fair doubt" sheds little light. We conclude that the instruction remains deficient for the reasons stated in *Delibac,* and that these deficiencies attain constitutional dimension when combined with the court's erroneous instruction that "[s]hould the prosecution fail to prove the guilt of a defendant beyond a reasonable doubt, you *may* acquit the defendant on the basis of the presumption of innocence." This error, in particular, runs afoul of the Court's primary admonition in *Victor:* while "the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof," it does require that the court "instructs the jury on the *necessity* that the defendant's guilt be proven beyond a reasonable doubt." *Victor,* —— U.S. at ——, 114 S.Ct. at 1243 (emphasis added). Because the court failed to convey this central requirement with clarity, it was "reasonabl[y] likel[y]" that "the jury understood the instructions to allow conviction based on [insufficient] proof." *Id.* at ——, 114 S.Ct. at 1243.

■ We conclude, additionally, that the court's errors were "obvious" under the plain-error rule, Fed.R.Crim.P. 52(b). Since *Winship,* few elements of due process have

been clearer than the necessity of informing the jury that, to convict, it must find each defendant guilty beyond a reasonable doubt of every element charged. Additionally, while the errors in Judge Billings's reasonable-doubt instruction may not have been "obvious" at the time we took note of them in *Delibac,* our identification of them as error at that time certainly made them "obvious" thereafter. *See Merlos,* 8 F.3d at 51.

While we find the court's errors "obvious," however, we note that it is far from clear whether such a finding is required in order to reverse. Although a finding of "obvious" error is generally required to reverse a conviction under Rule 52(b), *see Olano,* —— U.S. at —— – ——, 113 S.Ct. at 1777–78 (error must be "obvious" and "affect substantial rights" to constitute plain error), it is an open question, following *Sullivan* and *Victor,* whether this finding of "obviousness" is required when the error is a constitutionally deficient reasonable-doubt instruction.

As described above, *supra* at 9–11, it has been clear since *Sullivan* and *Victor* that the "substantial rights" prong of plain-error and harmless-error analysis is subsumed into a single inquiry concerning the "reasonable likelihood" that the jury misunderstood the instructions on the government's burden of proof; if there is such a likelihood, prejudice is presumed, and we must reverse. However, neither *Sullivan* (which concerned the harmless-error standard) nor *Victor* addressed whether in a plain-error context "obviousness" must also be presumed.

The apparent context of *Victor* was plain-error review, at least for one of the appellants, Victor, who, the Court noted, had failed to object to the instruction at trial or to raise the issue on direct appeal. —— U.S. at ——, 114 S.Ct. at 1249. Nonetheless, the Court employed the "reasonable likelihood" test without ever mentioning "obvious error." *Id.* at ——, 114 S.Ct. at 1243. A plausible conclusion would be that the Court interpreted its "reasonable likelihood" inquiry as encompassing not only the "prejudice" prong of *Olano*'s plain error review but also the requirement of "obviousness." Varying conclusions, however, have been reached by our sister circuits. *See United States v. Flores-*

*ca,* 38 F.3d 706, 712 (4th Cir.1994) (*in banc*) ("[i]t is an open question as to whether the absence of an objection requires further analysis when the alleged error goes to the heart of the entire judicial process"); *cf. Floresca,* 38 F.3d at 720–21 (Russell, J., dissenting) (taking issue with majority's conclusion); *Merlos,* 8 F.3d at 51 (interpreting *Sullivan* (prior to *Victor*) as eliminating the requirement of prejudice but not of "obviousness"). Since in the case before us we find the court's errors obvious as well as of constitutional dimension, we need not resolve this difficult issue in order to reverse.

## II. The Court's Decision to Allow Evidence of Buckley's Death

Birbal contends, secondly, that he was denied a fair trial by Judge Billings's *in limine* ruling permitting the prosecutor to elicit allegedly prejudicial testimony concerning Peter Buckley's death of a heroin overdose. For the reasons discussed below, we affirm the *in limine* ruling.

Before trial, Birbal moved to preclude the government from introducing any evidence relating to Buckley's death. He argued that Buckley's death was relevant only to sentencing and not to the issue before the jury, namely, whether he and Wright had distributed drugs to Buckley. Even if it were relevant to that issue, he argued, such evidence should be excluded, pursuant to Federal Rule of Evidence 403, as substantially more prejudicial than probative.

The district court denied Birbal's motion from the bench, concluding that although Buckley's death was "not an element of the crime charged," it was, however, "inexorably intertwined" with the issue of whether Birbal and Wright distributed narcotics to him. Transcript of Proceedings of Oct. 20, 1993, at 5. Accordingly, the court concluded, evidence of Buckley's death "doesn't come under [Rule] 403," and the motion was denied. *Id.* The court, however, invited Birbal's counsel to make a request for a limiting instruction at the conclusion of trial, instructing the jury that they should consider testimony regarding Buckley's death only insofar as it served to prove the crime charged, *i.e.,* narcotics distribution. At trial, the govern-

ment elicited substantial testimony concerning the details of Buckley's death, to which Birbal's counsel made no objection. After trial, Birbal's counsel made no request for a limiting instruction.

■■■■ We review the court's *in limine* ruling for abuse of discretion. *United States v. Brady*, 26 F.3d 282, 286 (2d Cir.), *cert. denied*, ── U.S. ──, 115 S.Ct. 246, 130 L.Ed.2d 168 (1994). We note first that the district court erred in concluding that evidence of Buckley's death "doesn't come under [Rule] 403." Rule 403, by its terms, makes no exception for "intertwined" or "background" evidence, but applies to all evidence. Nevertheless, the court did not abuse its discretion in denying Birbal's motion, as some evidence of Buckley's death was clearly relevant to whether the defendants distributed narcotics, and was not substantially more prejudicial than probative.

As we have previously noted:

The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir.1991) (quoting *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir.1988)), *cert. denied*, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992); *see also Brady*, 26 F.3d at 287 (finding evidence of uncharged murders admissible, as probative of existence of the charged conspiracy); *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.) (evidence of acts that "arose out of the same transaction or series of transactions as the charged offense" is admissible "if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial") (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983)), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).

Here, testimony concerning the circumstances of Buckley's death, even if prejudicial to defendants, was properly admitted to show that Birbal and Wright had distributed heroin to Buckley shortly before his death. In particular, Peter Buckley's daughter, Leah, testified that Birbal and Wright visited the Buckley home on the afternoon before Buckley's death; that defendants spent a few minutes with Buckley and then drove off; that, shortly after the two defendants left the home, her father began to experience severe physical discomfort, which manifested itself in staggering, vomiting, and calling out that he was in pain; and that she discovered her father dead in his bedroom the next morning. Certainly, this evidence—which was corroborated by the medical examiner's testimony— was crucial to the government in demonstrating that Birbal and Wright sold heroin to Buckley. Thus, the court did not abuse its discretion in denying Birbal's *in limine* motion to exclude all testimony regarding Buckley's death.

■■■ In addition to challenging the court's *in limine* ruling, Birbal challenges the court's "failure to restrict . . . the extremely prejudicial evidence that the government presented relating to Peter Buckley's death." Brief for Appellant Birbal, at 22. He notes that almost every government witness discussed Buckley's death, often in graphic detail, and the government referred to it repeatedly in its opening and closing arguments. Particularly inflammatory, he notes, was the emotional testimony of twelve-year-old Leah about how, when she went upstairs to wake up her father on Sunday morning, she found him dead in his bed. We address Birbal's contention in order to provide guidance to the district court on retrial.

Having moved *in limine* to exclude all evidence relating to Buckley's death, Birbal failed to raise an objection at trial to any of the testimony of which he now complains. He contends that, by moving *in limine* to exclude "any evidence" of Buckley's death, he preserved his right to appeal the admission of all such evidence. "It was apparent to [counsel] from the judge's pretrial ruling on this issue," he contends, "that any such objection [at trial] would be fruitless." Reply Brief for Appellant Birbal, at 5.

We cannot agree. Rule 103, Fed. R.Evid., requires that, in order to preserve an evidentiary claim for appeal, a party must make a "timely objection" at trial. While circumstances exist· in which a motion *in limine* is sufficient to preserve an evidentiary issue for appeal without a contemporaneous objection to the evidence at trial, *see United States v. Yu–Leung,* 51 F.3d 1116, 1121 (2d Cir.1995), this is not the case with regard to Rule 403 objections, which must be made at trial. *Id.* at 1120. "Because an appellate court cannot review a trial court's balancing of probative value and prejudice without reference to the witness's actual testimony, a defendant must both confront and challenge an adverse. evidentiary decision at trial to raise and preserve for review the correctness of this ruling." *Id.* (citations and internal quotations omitted). When the district court denied Birbal's *in limine* motion to exclude all evidence of Buckley's death, it did not thereby relieve Birbal's counsel of the obligation to object whenever specific inflammatory statements were made at trial. Thus, while we affirm the court's blanket *in limine* ruling, Birbal may still object at retrial to any specific testimony regarding Buckley's death which he considers unduly prejudicial, and indeed he must do so in order not to forfeit his right to appeal on this ground.

### III. *Double Jeopardy*

Birbal claims, finally, relying on *United States v. McCormick,* 992 F.2d 437 (2d Cir. 1993), that the district court erred when it failed to dismiss on double jeopardy grounds the two counts of his indictment that incorporated conduct for which his sentence had been enhanced when he was prosecuted previously for cocaine distribution. In *McCormick,* 992 F.2d at 440–41, we held that it violated the Double Jeopardy Clause to prosecute a defendant for conduct already used to increase his or her offense level. We need not examine whether *McCormick* governs this case, however, since, subsequent to briefing and oral argument in this case, *McCormick* was overturned by the Supreme Court. In *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), the Court held that it does not violate the Double Jeopardy Clause to prosecute a de-

fendant for activity that has been previously considered by a sentencing court as relevant conduct. Accordingly, Birbal's double jeopardy challenge fails.

### CONCLUSION

Because the district court's jury instructions on reasonable doubt were constitutionally deficient, we reverse the convictions of both defendants and order a new trial. The mandate shall issue forthwith.