07-5383-pr
Brown v. Greene

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

------------

August Term 2008

Argued: March 25, 2009           Decided: August 11, 2009
                                Amended: August 13, 2009

Docket No. 07-5383-pr

----------------------------------------------------X

DWAYNE BROWN,

Petitioner-Appellant,

- against -

JERRY GREENE, Superintendent, Great Meadow Correctional
Facility, ANDREW M. CUOMO,[1] Attorney General of New York State,

Respondent.

----------------------------------------------------X

Before:    FEINBERG, STRAUB, and RAGGI, Circuit Judges.

Appeal from a judgment entered in the United States District Court for the Southern District of New York (Kimba M. Wood, *Chief Judge*) denying petitioner-appellant Dwayne Brown's habeas corpus petition resulting from a conviction for robbery in a New York state court. Brown contends that the state appellate court unreasonably rejected his claim that he was denied effective assistance of counsel when his trial counsel failed to object to the state trial judge's instructions to the jury concerning the burden of proof. We disagree and AFFIRM the judgment of the district court.

Judge Straub dissents in a separate opinion.

---

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Andrew M. Cuomo is automatically substituted for former Attorney General Eliot Spitzer.

SUSAN EPSTEIN (Steven Banks, *on the brief*), The Legal Aid Society, New York, NY, for Petitioner-Appellant.

ASHLYN DANNELLY, Assistant Attorney General (Barbara D. Underwood, Solicitor General; Roseann B. MacKechnie, Deputy Solicitor General; Andrew M. Cuomo, Attorney General, *on the brief*), New York, NY, for Respondents-Appellees.

FEINBERG, Circuit Judge:

Petitioner-Appellant Dwayne Brown was convicted of second-degree robbery after a jury trial in 2002 in the New York State Supreme Court. On appeal thereafter to the First Department of the Appellate Division of the New York Supreme Court, Brown argued that his trial counsel was constitutionally ineffective. The jury charge, Brown contended, may have led the jury to convict him under a preponderance of the evidence standard and not, as is constitutionally required, under the beyond a reasonable doubt standard. According to Brown, trial counsel's failure to object to the charge constituted ineffective assistance of counsel. The Appellate Division rejected this argument. People v. Brown, 789 N.Y.S.2d 106, 108 (1st Dep't 2005). Thereafter, the New York Court of Appeals denied leave to appeal. People v. Brown, 4 N.Y.3d 852 (2005). Then, in June 2006, Brown brought a habeas petition pursuant to 28 U.S.C § 2254 in the United States District Court for the Southern District of New York (Kimba M. Wood, *Chief Judge*). The district court denied the petition, finding that the Appellate Division's opinion was not contrary to, or an unreasonable application of, federal law.

-2-

Brown v. Green, No. 06 Civ. 4824, 2007 U.S. Dist. LEXIS 82152 (S.D.N.Y. Nov. 6, 2007). We agree.

I. BACKGROUND

In January 2002, two men stopped Claudio Degli-Adalberti in a subway station on the Upper West Side of Manhattan and, after a brief scuffle, stole his wallet. A few minutes later, Degli-Adalberti contacted the police. He described the physical appearance of the two thieves, which the officers quickly broadcast over the police radio. A nearby squad car stopped two men thought to match the description: Brown and Eric Burwell. The police took Degli-Adalberti to view Brown and Burwell; he indicated that they were the men who had robbed him.

Brown and Burwell were charged with second degree robbery and tried jointly before New York State Supreme Court Justice Edward J. McLaughlin (hereafter "the trial judge"). The key issue at trial was whether Brown and Burwell were the two individuals who had robbed Degli-Adalberti. The opening and closing statements of both the defense and the prosecution focused on this aspect of the case and also included numerous statements to the effect that the jury must employ the reasonable doubt standard.[2]

_____

[2]There are too many such references to repeat them in detail. To give one example, the prosecution said, in summation: "The question is if the evidence you've heard proves the defendants' guilt beyond a reasonable doubt." Trial Tr. 661.

The jury charge included the following language, which we will refer to as the "50.1 to 49.9" instruction:

> A jury makes factual findings. 50.1 to 49.9, factual findings can be made, although they are not established beyond a reasonable doubt. The elements must be established beyond a reasonable doubt if they're going to be established at all.

The charge contained many other references (seven, by our count) to the beyond a reasonable doubt standard; most either told the jury to apply that standard or described how it functioned. For example, the trial judge told the jury: "The focus of a trial is to determine whether or not the prosecution can prove the elements of a crime beyond a reasonable doubt." J.A. 98. Later, the trial judge said, "[i]f the people prove the three elements . . . beyond a reasonable doubt . . . you must convict the person. If [they cannot prove] one or more or all of the elements, miss proving that beyond a reasonable doubt, you have no choice, you have to acquit the person." J.A. 104-05.[3] Finally, the charge also included the following statement, which we will call the "election example":

---

[3]See also J.A. 95-96 ("[T]he presumption of innocence . . . remains . . . until you're convinced . . . beyond a reasonable doubt . . . ."); J.A. 96-97 (describing reasonable doubt standard); J.A. 98 ("[I]t's the people's obligation to prove a defendant's guilt beyond a reasonable doubt."); J.A. 99-100 ("What is your concern is: Did the People prove beyond a reasonable doubt the elements of a robbery and . . . the accuracy of the identification . . . ?"); J.A. 103 ("So, there are three elements, each of which must be proved beyond a reasonable doubt.").

> [F]or centuries elections have been closely decided. 50.1 beats 49.9 every time . . . . And yet, for 230 years now, juries, the same pool of people who can't agree on a candidate, have been unanimously deciding cases. So, how does that happen? It happens, obviously, because within the jury deliberation context, people sometimes change their minds. . . . You can change your mind if somebody by reason, logic and reliance on the record of this case can cause you to change a position that you may have originally held.

No party objected to the charge.

The jury convicted Brown and Burwell after two and one-half hours of deliberation, and Brown received a sentence of 11 years to life in prison. As already indicated, on appeal to the Appellate Division, Brown argued that the jury charge was constitutionally deficient because it may have confused the jury, causing it to convict Brown based on a preponderance of the evidence standard. Brown also argued that trial counsel's failure to object to the jury charge constituted ineffective assistance of counsel. The Appellate Division found that "defendants received effective assistance of counsel" and that the direct challenge to the jury charge was unpreserved. Brown, 789 N.Y.S.2d at 108. The New York Court of Appeals denied leave to appeal. Brown, 4 N.Y.3d 852.

In June 2006, Brown brought this habeas petition in the Southern District, arguing only that trial counsel's failure to object to the jury charge constituted ineffective assistance of counsel. The petition was assigned to Chief Judge Wood, who referred it to Magistrate Judge Andrew J. Peck. The Magistrate

-5-

Judge recommended that the petition be granted. Brown v. Greene, No. 06 Civ. 4824, 2007 U.S. Dist. LEXIS 34460 (S.D.N.Y. May 11, 2007). Judge Wood disagreed and in a careful opinion denied the petition, but granted a certificate of appealability. Brown, 2007 U.S. Dist. LEXIS 82152. This appeal followed.

## II.  ANALYSIS

Brown's sole claim before us is that his trial counsel's failure to object to the jury charge constituted ineffective assistance of counsel.

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "[w]hen the state court has adjudicated the merits of the petitioner's claim . . . we may grant a writ of habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.'" Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)). When a district court has denied a habeas petition, we review its legal conclusions de novo and its factual findings for clear error. Drake v. Portuondo, 553 F.3d 230, 239 (2d Cir. 2009).

### B.  Ineffective Assistance and the Jury Charge

#### 1.  The Strickland and Winship Standards

Under Strickland v. Washington, 466 U.S. 668 (1984), to prevail on an ineffective assistance of counsel claim, petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness . . . and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." Carrion v. Smith, 549 F.3d 583, 588 (2d Cir. 2008) (internal quotation marks omitted). In assessing whether counsel's performance was objectively reasonable, "we must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and be watchful 'to eliminate the distorting effects of hindsight.'" Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (quoting Strickland, 466 U.S. at 689). Moreover, counsel "cannot be deemed incompetent for failing to predict" that a higher court would overrule its earlier precedent. Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994).

It has long been the law that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt . . . ." In re Winship, 397 U.S. 358, 364 (1970). If there is a "reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard," then the charge is constitutionally deficient. Victor v. Nebraska, 511 U.S. 1, 6 (1994); see also Estelle v. McGuire, 502 U.S. 62, 72 & n.4

(1991). However, "[i]n making this assessment, the challenged instructions must be viewed in context, not only with respect to the overall charge, but also with respect to the entire trial record." Gaines v. Kelly, 202 F.3d 598, 606 (2d Cir. 2000) (citing Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)).

2.    The "50.1 to 49.9" Instruction: Brown's Argument

Brown's principal contention is that the "50.1 to 49.9" instruction made it likely that the jury did not correctly apply the beyond a reasonable doubt standard. According to Brown, the "50.1 to 49.9" instruction told the jurors to make factual findings under the "50.1 to 49.9" rubric. This, Brown contends, may have led the jury to apply the "50.1 to 49.9" standard when determining whether the elements of the crime had been met.

Brown gives an example. One of the elements of second-degree robbery is that the prosecution must prove that the defendant took property "forcibly." See N.Y.P.L. § 160.10 (2009). According to Brown, the jury may have thought that the question of whether there was a physical struggle when Degli-Adalberti's wallet was stolen was a factual question that, under the judge's instructions, should be decided under the "50.1 to 49.9" standard. If the jury found, under that standard, that a struggle did occur, it might then automatically conclude that the force element had been satisfied. In the end, under Brown's reasoning, this would mean that the jury would have found an

-8-

element to have been satisfied under the "50.1 to 49.9" standard. According to Brown, the trial judge should have told the jury that it could only find certain facts under the "50.1 to 49.9" standard (or, alternatively, simply not said anything about making factual findings under a "50.1 to 49.9" standard).

3. Applicable Second Circuit Precedent

Three of our earlier cases dealt with jury charges that included language very similar to the "50.1 to 49.9" instruction. In United States v. Viafara-Rodriguez, 729 F.2d 912, 913 (2d Cir. 1984), the charge stated: "The requirement of proof beyond a reasonable doubt operates on the whole case, and not on the separate bits of evidence. And each individual item of evidence need not be proven beyond a reasonable doubt." We concluded that this statement was technically accurate, since "the burden of proof beyond a reasonable doubt . . . does not operate on the many subsidiary facts on which the prosecution [may prove] that a particular element has been established beyond a reasonable doubt." Id. at 913. Nonetheless, we found that the statement might confuse jurors, and we advised trial judges to stick to the model jury instructions. See id. at 913-14. But we concluded that "viewing the charge as a whole, we are persuaded that the jury in this case fully understood" the beyond a reasonable doubt standard, since the jury charge included at least three

statements to the effect that the jury must use that standard. Id. at 914 (internal citation omitted).

In United States v. Gatzonis, 805 F.2d 72 (2d Cir. 1986) (per curiam), we upheld a nearly identical charge. As in Viafara-Rodriguez, we noted that the charge, while "technically accurate," could be confusing and advised trial courts to use the model jury instructions. Id. at 74. Again, we rested our conclusion in part on the repetition by the trial judge in that case "at least five times during the jury instructions that all elements of an offense must be proved beyond a reasonable doubt. Thus, 'any ambiguity that might have arisen from the earlier reference that the burden operated on the "whole case" was sufficiently removed.'" Id. (quoting Viafara-Rodriguez, 729 F.2d at 914).

Finally, in United States v. Delibac, 925 F.2d 610, 614 (2d Cir. 1991) (per curiam), we rejected a challenge to a charge that stated that "[y]ou need not find every fact beyond a reasonable doubt. You need only find that the government has established . . . beyond a reasonable doubt each and every essential element of the crime charged." Again, we cautioned trial courts against departing from the model jury instructions, found the language

technically accurate but confusing and upheld the charge. See id.[4]

### 3. Trial Counsel's Failure to Object

The basic question before us in this proceeding is whether trial counsel's failure to object to the charge constituted ineffective assistance. We do not think that it did. A defense lawyer aware of Delibac, Viafara and Gatzonis might have reasonably believed that the charge in this case was not materially different from the charges that we had previously upheld. The actual language of the "50.1 to 49.9" instruction is not much different from the language in these earlier cases. And, as in those cases, the jury charge in this case contained several statements referring to the beyond a reasonable doubt standard.[5]

It might be possible, if this case were before us in a different procedural posture (i.e., if it did not involve the

---

[4]See also Mullings v. Meachum, 864 F.2d 13, 15-16 (2d Cir. 1988) (upholding charge that stated "[a]n inference in circumstantial evidence may be made providing that . . . the inference asked to be drawn is . . . strong enough so that you could find that it is more probable than not that the fact to be inferred is true.") [Altimari, Mahoney, Dearie].

[5] Indeed, immediately after the "50.1 to 49.9" statement, the trial judge in this case said that the "elements must be established beyond a reasonable doubt if they're going to be established at all." The charge then referred to the beyond a reasonable doubt standard seven additional times. Moreover, as noted above, both the prosecution and the defense referred to the beyond a reasonable doubt standard numerous times during opening and closing arguments.

-11-

deferential standards of AEDPA and <u>Strickland</u>), to find a distinction between Brown's case and the <u>Viafara-Rodriquez</u> line of cases. But such a distinction would be a fine one, and we would not find counsel constitutionally inadequate for failing to detect it.[6]

Brown also criticizes the "election example."[7] Brown argues that this statement would "remind [the jury] that earlier, [the trial judge had] told them that the facts had to be proven '50.1 to 49.9.'" However, we find this unlikely. As Brown concedes, it is obvious that the trial judge's use of the "election example" had nothing to do with the burden of proof; the trial judge was simply trying to explain to the members of the jury how

---

[6]In the past, we have encouraged trial judges to give both parties a written copy of the proposed jury charge before instructing the jury. See United States v. Birbal, 62 F.3d 456, 459 n.1 (2d Cir. 1995). It appears that the trial judge here did not do so. Providing a copy of the written instructions in advance makes it easier for the lawyers to ensure that the charge is free of erroneous or confusing language. This goal is presumably shared by both the defense and the prosecution; after all, the prosecution would like to protect from successful appeal the convictions that it secures.

[7]As we have already indicated, the "election example" is the section of the charge where the trial judge said: "[F]or centuries elections have been closely decided. 50.1 beats 49.9 every time . . . . And yet, for 230 years now, juries, the same pool of people who can't agree on a candidate, have been unanimously deciding cases. So, how does that happen? It happens, obviously, because within the jury deliberation context, people sometimes change their minds. . . . You can change your mind if somebody by reason, logic and reliance on the record of this case can cause you to change a position that you may have originally held."

-12-

they should deliberate (the message was that they should not be afraid to change their minds in response to other jurors' arguments). The fact that the "election example" included the same numbers that were in the "50.1 to 49.9" instruction is not, by itself, a sufficient distinction between this case and our earlier cases for us to find that trial counsel's failure to object was objectively unreasonable.[8]

We must emphasize that this is not a case about the jury instruction alone. The sole question that we are faced with today is whether counsel's performance was constitutionally deficient. We need not state whether Delibac, Gatzonis and Viafara-Rodriguez would compel us to uphold the charge if it came before us in a case that did not involve the deferential standards of AEDPA and Strickland. We need only hold that, given

---

[8]The dissent focuses on another argument: that the jury may have believed that it could find identity under a "50.1 to 49.9" standard. See *post*, at **[21-23]**. But the charge appears to state in at least two places that identity must be found beyond a reasonable doubt. First, the charge states "What is your concern is: Did the People prove beyond a reasonable doubt the elements of a robbery; and, equally if not more importantly, the accuracy of the identification of Mr. Burwell and Mr. Brown as the person or persons involved in the crime." J.A. 99-100. Second, the charge states that, under New York's one witness identification rule, the "testimony of one person is sufficient for there to be a conviction, provided that the [testimony is sufficiently persuasive and credible that it] permits the jury to be satisfied beyond a reasonable doubt . . . ." J.A. 100. Counsel for both sides also made numerous statements to the same effect. See, e.g., Trial Tr. 605 ("You have to decide whether or not Mr. Hammer proved beyond a reasonable doubt not only was a crime committed, but did Mr. Brown and, for that matter, Mr. Burwell commit the crime.").

those cases, and the procedural posture of this one, failure to object to the jury charge did not constitute ineffective assistance of counsel.[9] Thus, the New York court's rejection of Brown's habeas petition was not contrary to, or an unreasonable application of, federal law.

Although we do not grant Brown's petition, we repeat our suggestion that trial judges should use the model jury instructions when applicable. Improvised definitions of the beyond a reasonable doubt standard may be confusing or misleading. See, e.g., Viafara-Rodriguez, 729 F.2d at 913-14 ("[T]rial judges would be exceedingly well advised to use [the model instructions] rather than impose variations upon it.") (internal quotation omitted). We urge trial courts, in the future, to stick to the model jury instructions regarding this issue.

## III. CONCLUSION

---

[9]Brown devotes part of his brief to <u>People v. Johnson</u>, 783 N.Y.S.2d 5 (1st Dep't 2004), a case in which the Appellate Division reversed a conviction because of a charge that contained a statement similar to the "50.1 to 49.9" instruction, the "election example" and another problematic instruction, the "two-inference" charge. The majority opinion criticized all three parts of the charge, although it's not entirely clear whether the majority would have reversed if the charge did not contain the "two-inference" instruction, which is not present in this case. See id. at 8-9. In any event, <u>Johnson</u> should not be used as a basis to fault Brown's trial counsel, since it was decided two years after Brown's trial.

-14-

We hold that the Appellate Division's rejection of Brown's ineffective assistance of counsel argument was not contrary to, or an unreasonable application of, federal law, given that the charge at issue in this case was very similar to the charges upheld in <u>Gatzonis</u>, <u>Delibac</u>, and <u>Viafara-Rodriquez</u>. Accordingly, we AFFIRM the judgment of the district court entered pursuant to Chief Judge Wood's opinion.

STRAUB, *Circuit Judge*, dissenting:

"Our judicial system provides jurors with an awesome responsibility, placing a defendant's liberty in the[ir] hands . . . . Jurors cannot perform this role as protectors of liberty if they are not properly instructed about that role . . . ." *Fong v. Poole*, 522 F. Supp. 2d 642, 666 (S.D.N.Y. 2007) (Gerard E. Lynch, *Judge*).

This case illustrates the perils of instructing a criminal jury that not every fact must be proved beyond a reasonable doubt or, as the court instructed at Petitioner-Appellant Dwayne Brown's trial, that "factual findings . . . can be made" by "50.1 to 49.9." While strongly voicing our disapproval, we have previously tolerated instructions that a jury may apply to some factual determinations a standard of proof lower than beyond a reasonable doubt. *See United States v. Delibac*, 925 F.2d 610, 614 (2d Cir. 1991) (per curiam); *United States v. Gatzonis*, 805 F.2d 72, 73-74 (2d Cir. 1986) (per curiam), *cert. denied*, 484 U.S. 932 (1987); *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913 (2d Cir. 1984).

At Brown's trial, however, this troublesome preponderance language operated in concert with the court's additional, unnecessary deviations from pattern instructions to diminish the prosecution's burden of proving beyond a reasonable doubt that Brown was one of the two men who robbed Claudio Degli-Adalberti. In effect, Brown's jury was instructed to decide whether Brown had been accurately identified as one of the perpetrators, the *only* disputed fact at trial, by a mere preponderance of the evidence. Such a jury charge is constitutionally deficient, and in my view it is unreasonable to find otherwise.

I further believe that it was outside the range of reasonably competent assistance for

1

Brown's trial counsel to fail to object to this charge. A defendant's Sixth Amendment right to the effective assistance of counsel encompasses counsel's obligation to ensure that jury instructions adequately convey the bedrock principle that the prosecution's burden of proof is proof beyond a reasonable doubt. In my view, Brown was denied this right and the state court's rejection of his claim was unreasonable. Accordingly, I respectfully dissent.

**I. State Court Proceedings**

*A. Trial and Jury Instructions*

The crux of the People's case against Brown was Degli-Adalberti's testimony that he had been mugged by two men and that he accurately identified Brown and Eric Burwell as his assailants when brought to the scene of their arrest several blocks away. At trial, Brown and Burwell did not dispute that Degli-Adalberti had been robbed. The sole factual dispute for the jury to resolve and the focus of all parties' opening statements and summations was whether the defendants had been accurately identified.

At the core of my disagreement with the majority lies my view that the jury charge is fairly read to have instructed the jury to use a mere preponderance of the evidence standard in deciding the identity of Degli-Adalberti's robbers rather than the constitutionally required standard of proof beyond a reasonable doubt. This reading is conveyed by the following portions of the jury charge[1]:

---

[1] Because it is essential to consider the jury charge in its entirety and not just challenged language in isolation, *see United States v. Shamsideen*, 511 F.3d 340, 345 (2d Cir. 2008), my analysis takes the whole charge into account. I recite here in context only those portions of the charge that are particularly troublesome. In my view, the flaw in the majority's analysis stems from its consideration of the court's "50.1 to 49.9" instruction and references to reasonable doubt

We have different functions. You are the exclusive judges of the facts. Only you can make the accuracy and credibility assessments that are the starting point of your decision-making.

. . . .

Your chief function as finders of fact is to determine the accuracy and the credibility of the people who testify in front of you. The way you do that is really the way you do it in your own lives. Only you can say that a person who testified was truthful or not truthful and what weight or emphasis you should give to the testimony; was the person accurate or inaccurate.

I'm going to give you some suggestions, but you'll see that these are things that any functional, intelligent adult human being considers instinctively in his or her effort to decide accuracy and truthfulness.

. . . .

It is the quality [of the evidence] and not the quantity which must control.

That principle, quality not quantity, is the reason why New York has the one-witness identification rule about which you were alerted during the jury selection. The testimony of one person is sufficient for there to be a conviction, provided [that] testimony is of sufficient persuasiveness and credibility that [it] permits the jury to be satisfied beyond a reasonable doubt that the People have proven their case.

. . . .

Crimes are defined by elements. The focus of a trial is to determine whether or not the prosecution can prove the elements of a crime beyond a reasonable doubt.

During the course of a trial, things happen. You hear testimony. You can spend your deliberation time trying to resolve each and everything that you heard. My suggestion is you try to resolve only the things that you need to resolve in order to make a determination whether the People have proven the elements of a charge beyond a reasonable doubt.

A jury makes factual findings. 50.1 to 49.9, factual findings be [sic] can be made, although they are not established beyond a reasonable doubt.

The elements must be established beyond a reasonable doubt if they're going to be established at all.

---

in isolation without engaging in the totality review that is required.

. . . .

What your concern is: Did the People prove beyond a reasonable doubt the elements of a robbery; and, equally, if not more importantly, the accuracy of the identification of Mr. Burwell and Mr. Brown as the person or persons involved in the crime.

. . . .

With regard to identification cases, as this is, it's the judge's responsibility to focus the jury on the considerations that a jury should go through in deciding whether or not the People have proven an accused's guilt beyond a reasonable doubt. I'll go through these things.

But, with respect to the credibility factors and the identification considerations, you'll see that an intelligent, functioning adult human being instinctively would think of or examine, assess virtually all these things, if not all these things, in trying to determine whether the People have met their burden.

First of all, you've got to decide the credibility of Mr. Degli-Adalberti, as well as any other witness. Because only by initially making factual decisions do you have a basis on which to draw your ultimate conclusions. You've got to decide what facts you're working with. That means you've got to decide as the witnesses are conveying testimony here, is their testimony accurate and credible.

So, with respect to whether the identification is truthful, that is not deliberately false[, y]ou must evaluate the believability of the witness who makes an identification. In doing so, you may consider the various factors for evaluating the believability of a witness' testimony that I listed for you a while ago with regard to whether the identification is accurate . . . .

. . . .

[These factors are c]ommon sense things that any intelligent person would assess in making the determination whether the defendant or defendants are correctly identified.

You heard me say crimes are defined by elements. Essentially, there are three elements with regard to robbery.

. . . .

So, there are three elements, each of which must be proven beyond a reasonable doubt.

Was there a theft?

Ordinary meaning.

Was there force used?

Force is any physical force beyond some incidental

4

touching.

And, was there a person present who was present, ready, willing and able to aid in the commission of the robbery, the theft?[2]

. . . .

Those three elements have to be proven separately as to each person, Mr. Burwell and Mr. Brown.

If the People prove the three elements as I've just described them beyond a reasonable doubt, each one of them, then you have no choice, you must convict the person. If the People miss any one or more or all of the elements, miss proving that beyond a reasonable doubt, you have no choice, you have to acquit the person.

. . . .

Does the jury unanimously agree as to the charge against Mr. Burwell, as to the charge against Mr. Brown? When you get into the jury room, conceivably, there would be disagreements among you. Not surprising.

The two most important civic functions that people do are to vote and to serve on juries. And for centuries elections have been closely decided. 50.1 beats 49.9 every time, and then you're stuck with somebody for two, four, six or in the case of some judicial elections fourteen long years. And, yet, for 230 years now, juries, the same pool of people who can't agree on a candidate, have been unanimously deciding cases.

So, how does that happen? It happens, obviously, because within the jury deliberation context, people sometimes change their minds.

Although no party objected to the charge, Burwell's counsel asked for confirmation that the identification charge included an instruction that "along with the elements of the crime, that the identification of these people being the perpetrator was proven beyond a reasonable doubt." The court responded that this was "[t]he first thing I said."

The jury returned a verdict convicting both Brown and Burwell of second degree robbery.

---

[2] *See* N.Y. PENAL LAW § 160.10[1] ("A person is guilty of robbery in the second degree when he forcibly steals property and when: 1. He is aided by another person actually present.").

On August 7, 2002, Brown was sentenced to a term of imprisonment of sixteen years to life.

**B. Direct Appeal**

As the majority recounts, *see ante* at **[5-6]**, on appeal, Brown, represented by his current counsel, pressed several claims, including that the trial court's jury instructions diminished the prosecution's burden of proof and that his trial counsel's failure to object to the charge violated his right to the effective assistance of counsel, all in violation of his federal and state constitutional rights. While Brown's direct appeal was pending, the Appellate Division, First Department, held in *People v. Johnson*, 11 A.D.3d 224, 783 N.Y.S.2d 5 (1st Dep't 2004), *leave to appeal denied*, 4 N.Y.3d 745 (2004), that substantially similar jury instructions—delivered by the same Justice of the Supreme Court, Hon. Edward McLaughlin, who presided over Brown's trial—"risk[ed] eliminating the reasonable doubt standard from the trial," and thus required reversal of that defendant's robbery conviction. *Id.* at 226, 783 N.Y.S.2d at 8. At Johnson's trial in May 2002, Justice McLaughlin had, as he would do at Brown's trial the following month, instructed the jury that it should find facts by a preponderance of the evidence and that this 50.1 to 49.9 standard does not apply to the requirement of jury unanimity.[3] *See id.* at 224, 226, 783 N.Y.S.2d at 6-8. In addition, at Johnson's trial, the court gave a two-inference charge, *see id*. at 224, 783 N.Y.S.2d at 6, while such a charge was not given at Brown's trial.

Despite the similarity of the instructions, the extended discussions of the recently decided *Johnson* appeal in the prosecution's response brief and Brown's reply brief, and the overlapping

---

[3] Unlike Brown's counsel, Johnson's counsel objected to "the 50.1 and 49.9 point" as "confusing to the jury." *See Johnson*, 11 A.D.3d at 224, 783 N.Y.S.2d at 7. In overruling this objection, the trial court noted that others had previously objected to this language.

6

composition of the appellate panels,[4] the Appellate Division, First Department, affirmed Brown's

and Burwell's convictions without any reference to *Johnson*.[5] *People v. Brown*, 14 A.D.3d 356,

789 N.Y.S.2d 106 (1st Dep't 2005) ("*Brown I*"). In *Brown I*, the court simply held with respect

to the jury charge issues: "The record establishes that defendants received effective assistance of

counsel. Defendant's [sic] remaining contentions are unpreserved and we decline to review them

in the interest of justice." *Id.* at 357, 789 N.Y.S.2d at 108 (citations omitted).

**II. Federal Court Habeas Proceedings**

*A. Standards of Review*

Under the deferential standard of review established by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), in order for Brown to prevail on his habeas petition, he

must show that the state court's adjudication of his ineffective assistance of counsel claim

---

[4] Three justices from the *Johnson* decision—Justices Tom, Saxe, and Gonzalez—heard Brown's appeal.

[5] The Appellate Division, First Department, has rejected challenges to Justice McLaughlin's jury instructions in other cases by expressly distinguishing *Johnson*. *See People v. Miller*, -- A.D.3d ---, --- N.Y.S.2d ----, 2009 WL 2015664 (1st Dep't July 14, 2009); *People v. Alvarez*, 54 A.D.3d 612, 613, 864 N.Y.S.2d 410, 410 (1st Dep't 2008); *People v. Henderson*, 50 A.D.3d 525, 525, 856 N.Y.S.2d 97, 98 (1st Dep't 2008); *People v. Gortspujuls*, 44 A.D.3d 368, 369, 844 N.Y.S.2d 8, 9-10 (1st Dep't 2007); *People v. Jones*, 19 A.D.3d 220, 220, 797 N.Y.S.2d 63, 64 (1st Dep't 2005); *People v. Garcia*, 15 A.D.3d 151, 152, 788 N.Y.S.2d 599, 599-600 (1st Dep't 2005). However, Justice McLaughlin "has frequently been admonished or reversed for unorthodox and incorrect jury instructions." *Fong v. Poole*, 522 F. Supp. 2d 642, 666 & n.11 (S.D.N.Y. 2007) (granting habeas petition due to unconstitutional *Allen* charge) (collecting cases); *see also People v. Sandoval*, 56 A.D.3d 253, 255-57, 866 N.Y.S.2d 656, 658-59 (1st Dep't 2008) (reversing because jury charge relieved prosecution of obligation to prove element of burglary and instructed that the elements had been established), *leave to appeal denied*, 11 N.Y.3d 930 (2009); *People v. Hill*, 52 A.D.3d 380, 382-83, 860 N.Y.S.2d 518, 520-21 (1st Dep't 2008) (reversing because "jury charges on accessorial liability and justification were confusing and erroneous").

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see, e.g.*, *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009).

The parties agree that the "clearly established Federal law" underlying Brown's claim is *Strickland v. Washington*, 466 U.S. 668 (1984), and "a petitioner is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also 'clearly established,'" *Aparicio v. Artuz*, 269 F.3d 78, 95 n.8 (2d Cir. 2001).

Under *Strickland*, to establish ineffective assistance, petitioner "must (1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (internal quotation marks omitted).

"AEDPA, however, requires more than a conclusion that counsel's performance was constitutionally inadequate." *Id.* at 591 n.4; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). "[P]etitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief. That increment, however, need not be great; otherwise, *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (citations and internal quotation marks omitted). However, "because the *Strickland* standard is a general standard, a state court

8

has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *see Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006), *cert. denied*, 549 U.S. 1215 (2007).

**B.  <u>*Strickland's Prejudice Prong*</u>**

As the parties agree, *Strickland*'s prejudice prong is satisfied if the trial court gave an unconstitutional reasonable doubt instruction.  *See Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998) ("[W]e will presume prejudice when a jury instruction on reasonable doubt is found to be constitutionally deficient.").  Thus, Brown may satisfy this aspect of his claim "regardless of the strength and quantity of evidence against him."  *Id.* at 195.

The test for determining whether a reasonable doubt instruction is constitutionally deficient "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard," *Victor v. Nebraska*, 511 U.S. 1, 6 (1994), which requires that a criminal conviction be based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship*, 397 U.S. 358, 364 (1970).

It bears emphasizing that "we do not review challenged language in isolation; rather, we consider the charge in its entirety to determine whether, on the whole, it provided the jury with an intelligible and accurate portrayal of the applicable law." *United States v. Shamsideen*, 511 F.3d 340, 345 (2d Cir. 2008) (citations, internal quotation marks, and brackets omitted). "Accordingly, an asserted error in a reasonable doubt instruction may be innocuous or inconsequential when viewed in the context of the charge as a whole; surrounded by different

9

language in a different charge, however, the same language may create a constitutional infirmity." *Vargas v. Keane*, 86 F.3d 1273, 1277 (2d Cir.), *cert. denied*, 519 U.S. 895 (1996). "The jury charge taken as a whole might have explained the proper [standard] with sufficient clarity that any ambiguity in the particular language challenged could not have been understood by a reasonable juror as [reducing] the burden of persuasion." *Francis v. Franklin*, 471 U.S. 307, 318-19 (1985). On the other hand, "vague language that in and of itself does not warrant reversal, may become grounds for reversal when it is coupled with other problematic (but, in itself, non-fatal) language in a manner that is reasonably likely to confuse the jury." *Gaines v. Kelly*, 202 F.3d 598, 607 (2d Cir. 2000). Although a particular instruction "may withstand constitutional scrutiny in isolation, our analysis focuses on the cumulative effect," and even if each instruction were "to pass constitutional muster, their cumulative effect may violate constitutional due process." *Id.* at 606-07.

Here, the court's instruction that a jury is to find facts by a preponderance standard of "50.1 to 49.9" must be viewed in the context of the charge as a whole.[6] Doing so leads me to conclude that the jury charge in this case instructed the jury to apply the preponderance of the evidence standard in determining whether the defendants had been accurately identified—the

---

[6] As a threshold matter, I reject respondents' argument that "the court never provided a burden of proof instruction other than proof beyond a reasonable doubt" because the "50.1 to 49.9" instruction was used merely to distinguish the preponderance standard from the standard of proof beyond a reasonable doubt. Brief for Respondents-Appellees at 34-35. The court did not refer to the preponderance standard only as a foil not to be applied by the jury. Rather, the court expressly instructed: "A jury makes factual findings. 50.1 to 49.9, factual findings can be made," and "only by initially making factual decisions do you have a basis on which to draw your ultimate conclusions."

most important, and indeed the only factual dispute at trial. While the court instructed the jury to find the elements of robbery beyond a reasonable doubt, it did not clearly instruct that identification must be so proven, but rather described the issue of identification as a "factual decision[]" subject to the "50.1 to 49.9" standard. In addition, the court highlighted this erroneous preponderance standard at the conclusion of the charge, stating that "50.1 beats 49.9 every time" in elections, but a jury must decide cases unanimously. In my view, the court's instruction to make factual determinations by a preponderance of the evidence, considered in the context of the entire charge, created a reasonable likelihood that the jury unconstitutionally applied that standard to a "fact necessary to constitute the crime with which [Brown] [wa]s charged." *Winship*, 397 U.S. at 364. And I respectfully believe that it is unreasonable to conclude otherwise.[7]

Initially, the court correctly explained that under New York's "one-witness identification rule . . . [t]he testimony of one person is sufficient for there to be a conviction, provided [that] testimony is of sufficient persuasiveness and credibility that [it] permits the jury to be satisfied beyond a reasonable doubt that the People have proven their case." However, with each reference to the question of identity, the court's instructions increasingly obscured and diluted the

---

[7] The majority evaluates *Strickland*'s performance prong and holds that Brown's counsel's failure to object to the charge was not unreasonable. *See ante* at **[11-12, 14]**. While the majority need not separately address *Strickland*'s prejudice prong, *see Strickland*, 466 U.S. at 697, this holding implies that the majority thinks the Appellate Division, like trial counsel, could have reasonably concluded that the charge here was not constitutionally deficient. I disagree on both fronts. Although the majority deems it difficult to distinguish this charge from others we have upheld on direct review, *see ante* at **[12]**, I note that the majority expressly reserves judgment on whether this charge would be upheld if it were before us in a different posture, *see ante* at **[12, 14]**.

11

applicable burden of proof.

At the outset, the court charged the jury with the duty to find facts and to make "accuracy and credibility assessments" as "the starting point of your decision-making." It went on to describe two ways in which the jury may find facts, by examining direct evidence or by drawing reasonable inferences therefrom. The court soon repeated that making accuracy and credibility assessments is the jurors' "chief function as finders of fact." The court further elaborated on the methods the jurors should employ in executing this task, first explaining that the methods are those "that any functional, intelligent adult human being considers instinctively in his or her effort to decide accuracy and truthfulness."

As noted, the court then referenced New York's "one-witness identification rule," defining the prosecution's burden as proof "beyond a reasonable doubt." After instructing on the presumption of innocence and the meaning of "reasonable doubt," the court repeated that "it's the People's obligation to prove a defendant's guilt beyond a reasonable doubt." In returning to this burden after a brief digression on issues the jury should not consider, the court explained, "Crimes are defined by elements. The focus of a trial is to determine whether or not the prosecution can prove the elements of a crime beyond a reasonable doubt." The court then explained that the jurors need not "resolve each and everything that you heard." The court suggested rather that the jurors "try to resolve only the things that you need to resolve in order to make a determination whether the People have proven the elements of a charge beyond a reasonable doubt." At this point, the court delivered the challenged preponderance instruction:

A jury makes factual findings. 50.1 to 49.9, factual findings

12

can be made, although they are not established beyond a reasonable doubt.

The elements must be established beyond a reasonable doubt if they're going to be established at all.

After referencing other issues the jury should not consider, the court reiterated what the jury's "concern is" and gave its second instruction regarding the burden of proof and the identification of the defendants:

Did the People prove beyond a reasonable doubt the elements of a robbery; and, equally, if not more importantly, the accuracy of the identification of Mr. Burwell and Mr. Brown as the person or persons involved in the crime.

By separating identification from "the elements," this instruction is not entirely clear about the standard of proof applicable to identification.

Most perniciously, however, the discussion of identification that follows treats this critical issue as a preliminary factual determination that is subject to the 50.1 to 49.9 preponderance standard previously charged. The court's instructions on how to make the identification decision do this expressly by describing the accuracy and credibility of Degli-Adalberti's identity testimony as a "factual decision[]" to be made "initially" before "draw[ing] your ultimate conclusions." As previously mentioned, the challenged preponderance instruction, which advises the jury "to resolve only the things that you need to resolve in order to make a determination" of the ultimate question of "whether the People have proven the elements of a charge beyond a reasonable doubt," distinguishes factual findings that can be made by a preponderance from "elements that must be established beyond a reasonable doubt." Combining these instructions would undoubtedly create a reasonable likelihood that the jury applied the

13

"50.1 to 49.9" standard to the critical question of identity.

The charge reinforces the application of the preponderance standard to the identification determination by then repeating and incorporating "the various factors for evaluating the believability of a witness' testimony" that had previously been charged as the tools to be used in carrying out the jurors' "chief function as finders of fact." While the court first refers to these tools in its fact-finding instructions as "things that any functional, intelligent adult human being considers instinctively in his or her effort to decide accuracy and truthfulness," the court describes them similarly in its identification instructions as tools "that an intelligent, functioning adult human being instinctively would think of or examine," and "[c]ommon sense things that any intelligent person would assess in making the determination whether the defendant or defendants are correctly identified." These parallel instructions strengthen the court's direction to treat identity as a factual determination subject to the "50.1 to 49.9" standard. Moreover, immediately after this instruction on identification, the court switches gears to discuss the "three elements," emphasizing that each must be proven beyond a reasonable doubt, while failing to mention the critical issue of identification. This omission further solidifies the court's treatment of identification as a fact to be determined by the preponderance of the evidence standard rather than an "element" subject to the higher standard of proof beyond a reasonable doubt.[8]

---

[8] A lengthy instruction on useful factors for evaluating the accuracy of identification testimony, even one that cross-references other portions of a charge, is not necessarily problematic. Indeed, "expanded identification instructions are preferable, especially when there is a close question of identity," *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001), and the trial court's elaboration of these factors appears to derive from New York's pattern instructions. *See* Criminal Jury Instructions New York, Identification – One Witness (2d ed.), http://www.nycourts.gov/cji/1-General/CJI2d.Identification-One_Witness.pdf (last visited

14

Finally, the court's subsequent statement that "50.1 beats 49.9 every time," although delivered in the course of explaining the required unanimity of a jury verdict, "could only have reinforced the court's improper instruction on the standard of proof." *People v. Johnson*, 11 A.D.3d 224, 227, 783 N.Y.S.2d 5, 9 (1st Dep't 2004); *see Bollenbach v. United States*, 326 U.S. 607, 612 (1946) ("Particularly in a criminal trial, the judge's last word is apt to be the decisive

August 10, 2009). However, the court's introduction of the factors and transition to the elements notably departs from the pattern instructions in ways that would lead the jury to apply the preponderance standard to identification. By contrast, New York's pattern instruction surrounds the credibility factors with language clearly directing the application of the beyond a reasonable doubt standard:

> The People have the burden of proving beyond a reasonable doubt, not only that a charged crime was committed, but that the defendant is the person who committed that crime.
> Thus, even if you are convinced beyond a reasonable doubt that a charged crime was committed by someone, you cannot convict the defendant of that crime unless you are also convinced beyond a reasonable doubt that he/she is the person who committed that crime.
> . . . .
> Because the law is not so much concerned with the number of witnesses called as with the quality of the testimony given, the law does permit a guilty verdict on the testimony of one witness identifying the defendant as the person who committed the charged crime. A guilty verdict is permitted, however, only if the evidence is of sufficient quality to convince you beyond a reasonable doubt that all the elements of the charged crime have been proven and that the identification of the defendant is both truthful and accurate.
> . . . .
> If, after careful consideration of the evidence, you are not satisfied that the identity of the defendant as the person who committed a charged crime has been proven beyond a reasonable doubt, then you must find the defendant not guilty of that charged crime.

*Id.*

15

word."); *United States v. Hughes*, 389 F.2d 535, 537 (2d Cir. 1968) ("[T]he impact of the quoted statement must have been considerable, coming as it did just a few moments before the jury retired and prefaced with, 'In the final analysis.'"); *cf. United States v. Shamsideen*, 511 F.3d 340, 349 (2d Cir. 2008) (distinguishing *Hughes* in part because jurors were given a written copy of full charge and challenged instruction was not the last word before deliberations).[9]

Brown argues that by distinguishing "two categories, facts and elements," and giving different burdens of proof for each without explaining that elements are themselves "essential facts," the charge advises the jury to engage in a "two-step process" of making factual determinations by a preponderance of the evidence and then deciding whether these facts establish beyond a reasonable doubt the elements defined by the court as a set of "legalistic" questions, e.g., "Was there a theft?" *See* Brief for Petitioner-Appellant at 52, 55-57; Reply Brief for Petitioner-Appellant at 5-6; *ante* at **[8-9]**.

Whatever risk of confusion this convoluted process generates with respect to the elemental facts particular to second degree robbery—theft, force, and another person present—the preceding demonstrates the near certain use of the "50.1 to 49.9" standard for the

---

[9] I agree with the majority that the "election example," with its reference to 50.1 and 49.9, "is not, by itself, a sufficient distinction between this case and our earlier cases for us to find that trial counsel's failure to object was objectively unreasonable." *Ante* at **[13]**. But, as explained above, I do not find a charge that advises a jury to find the identity of the perpetrator by a 50.1 to 49.9 standard to be acceptable even without this reference. Nor does it seem necessary to reference this improper standard in order to make the point that jurors should deliberate with open minds. As the colloquy with counsel for respondents at argument indicates, the relationship between this point and the fact that "50.1 beats 49.9 every time" in elections is not obvious. And as the Appellate Division found in *Johnson*, the reference is not obviously harmless.

16

essential determination of the identity of the robbers. Thus, I would hold that, viewed in its entirety, this jury charge undoubtedly created a reasonable likelihood that the jury understood it could decide the only disputed fact at trial—identity—by a mere preponderance of the evidence.

The court's instruction that "factual findings can be made" "50.1 to 49.9" is legally accurate with respect to *some* factual findings. The prosecution's burden of proof "does not operate upon each of the many subsidiary facts on which the prosecution may collectively rely to persuade the jury that a particular element has been established beyond a reasonable doubt." *United States v. Viafara-Rodriguez*, 729 F.2d 912, 913 (2d Cir. 1984). Likewise, the court's explanation that the preponderance standard governs political elections, whereas unanimity is required for a criminal verdict, is also accurate.

But the constitutional touchstone in this context is whether, upon review of the charge as a whole, "there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at 6. And the insertion of accurate statements, even those "lifted word for word from the *Federal Reporter*," into a jury charge may generate an intolerable risk of confusion. *Viafara-Rodriguez*, 729 F.2d at 913. Indeed, the subsidiary fact doctrine and the reasonable doubt standard are not easily applied by judges, *see, e.g.*, *United States v. Martinez*, 54 F.3d 1040 (2d Cir.), *cert. denied*, 516 U.S. 1001 (1995); Jon O. Newman, *Beyond "Reasonable Doubt*," 68 N.Y.U. L. REV. 979, 991-97 (1993), let alone lay jurors who may hear the rule only once before deliberating. The risk of such confusion, even from "a correct statement of the law," is "certainly unnecessary." *United States v. Delibac*, 925 F.2d 610, 614 (2d Cir. 1991) (per curiam).

17

The majority holds that it was reasonable for Brown's counsel to believe that this jury charge is not materially different from charges we previously upheld that instructed that not every fact must be proved beyond a reasonable doubt. *See ante* at **[9-11, 14-15]** (discussing *Delibac*, 925 F.2d at 614; *United States v. Gatzonis*, 805 F.2d 72, 73-74 (2d Cir. 1986) (per curiam), *cert. denied*, 484 U.S. 932 (1987); *Viafara-Rodriguez*, 729 F.2d at 913-14). And, as the District Court observed, we upheld such instructions despite the absence of an explanation of "which facts required proof beyond a reasonable doubt, and which facts need not be proven beyond a reasonable doubt." *Brown v. Greene*, No. 06 Civ. 4824, 2007 WL 3286638, at *5 (S.D.N.Y. Nov. 6, 2007) ("*Brown III*") (internal quotation marks omitted).[10]

But as Brown points out, at his trial, the court did not merely instruct that *some* facts, as opposed to "elements," need not be proved beyond a reasonable doubt. *See* Brief for Petitioner-Appellant at 58-59. Rather, it instructed that *all* facts—whether or not they were critical to deciding if defendants were guilty of the crime charged—may be proved by a preponderance. And the court further instructed that identification was a "factual decision[]" subject to this impermissibly low standard of proof. Clearly, the identification of petitioner was an ultimate fact

---

[10] While Brown suggests that such an explanatory instruction would have cured the charge, omitting unnecessary references to the preponderance standard may more simply avoid the risk of confusion. *See Viafara-Rodriguez*, 729 F.2d at 913 ("The range of . . . matters [on which the burden of proof operates] suggests the hazard of attempting to tell the jury anything more than it needs to know in a particular case. That the burden applies to the defendant's guilt and to every element necessary to establish guilt will normally be sufficient."); *Johnson*, 11 A.D.3d at 230, 783 N.Y.S.2d at 11 (Saxe, J., concurring) ("[I]n the absence of a particular question, or some other unique circumstance making such an instruction important, giving this 'subsidiary facts' charge in the context of the general closing charge to the jury is a pernicious practice, having no positive impact and being very likely to serve only to confuse the jury.").

18

essential to his conviction. *See, e.g.*, *Bunkley v. Meachum*, 68 F.3d 1518, 1523 (2d Cir. 1995) (explaining that identity, like intent, "is an essential element"). In my view, this presents a constitutionally significant distinction.

Moreover, we upheld these instructions in *Delibac*, *Gatzonis*, and *Viafara-Rodriguez* only after vigorously disapproving of the language and satisfying ourselves that the charge as a whole adequately conveyed the proper burden of proof to the jury. *See Delibac*, 925 F.2d at 614; *Gatzonis*, 805 F.2d at 74; *Viafara-Rodriguez*, 729 F.2d at 913-14. And, as explained *supra* at **[9-10]**, while "an asserted error in a reasonable doubt instruction may be innocuous or inconsequential when viewed in the context of" one jury charge "as a whole," "the same language may create a constitutional infirmity" when "surrounded by different language in a different charge." *Vargas v. Keane*, 86 F.3d 1273, 1277 (2d Cir. 1996); *see also Shamsideen*, 511 F.3d at 345-46 (discussing importance of "totality review . . . in assessing claims that discrete charging language reduced the government's burden of proof"). Despite the similarity of the preponderance instruction in this case to the language in charges upheld in *Delibac*, *Gatzonis*, and *Viafara-Rodriguez*, the challenged preponderance instruction, viewed in the context of the court's discussion of the jurors' role as "finders of fact" and the critical *factual* determination of identity, created a high likelihood of confusion about the burden of proof.

Indeed, the charge here is comparable to that found constitutionally deficient in *Callahan v. LeFevre*, 605 F.2d 70, 73-75 (2d Cir. 1979), in which "the jurors were charged that if they believed the testimony of the eye witnesses, then they would be convinced beyond a reasonable doubt. That charge required conviction if the jury found the facts to be as stated by the eye

19

witnesses even by a preponderance of the evidence." *Justice v. Hoke*, 45 F.3d 33, 36 (2d Cir. 1995); *see also Callahan*, 605 F.2d at 74 (explaining that this "instruction allowed, indeed ordered, the jury to bootstrap this [preponderance-based] belief into proof beyond a reasonable doubt"). The District Court distinguished *Callahan*, finding that "[n]o such 'bootstrapping' is likely in this case because the subsidiary fact instruction in no way equated the preponderance standard with the reasonable doubt standard," and, in fact, the charge "explicitly stated that '50.1 to 49.9[] factual findings . . . are not established beyond a reasonable doubt.'" *Brown III*, 2007 WL 3286638, at *4 n.5.

While such improper "bootstrapping" may be only somewhat likely in the case of the facts that compose the elements of robbery, e.g., force, *cf. ante* at **[9]**, I have no doubt that the jury was instructed to convict if they found the only disputed fact, identity, by a preponderance of the evidence.[11] The charge distinguished identity and factual determinations from those elements that had to be proved beyond a reasonable doubt. Thus, its caveat that factual findings made by a preponderance do not satisfy the standard of proof beyond a reasonable doubt does not correct the error caused by instructing the jury to apply the preponderance standard to the critical fact of

---

[11] This makes the charge here materially worse than that under review in *Justice v. Hoke*, 45 F.3d 33, in which the court had instructed the jury to determine the facts and then "look at the law and see if the People have met their burden beyond a reasonable doubt as to each and every element." *Id.* at 35. In *Justice*, we found it "highly unlikely that the jury interpreted this repeated charge to mean that its function was simply to plug facts found under some unstated standard into these elements in order to ascertain whether there is a match beyond a reasonable doubt." *Id.* As the Magistrate Judge observed, however, in this case, the court provided an alternative, unconstitutionally low standard of proof for facts, including the critical fact of identity. *See Brown v. Greene*, No. 06 Civ. 4824, 2007 WL 1379873, at *18 (S.D.N.Y. May 11, 2007) ("*Brown II*").

identity.

For this reason, I cannot agree with the majority that this charge is saved by the court's repeated references to the standard of proof beyond a reasonable doubt. *See ante* at **[4-5 & n.3, 12 & n.5]**.[12] A jury charge might instruct 100 times that issues X and Y must be proved beyond a reasonable doubt; but that would not cure any deficiency caused by instructing an improper burden with respect to issue Z. Out of the eight references to the proper standard relied upon by the majority, four refer specifically to proof of "the elements," a category from which the court's instructions exclude the issue of identification. And the court's description of the "reasonable doubt" standard does not clarify the determinations to which it applies.[13]

I recognize that the court's charge may also be read to have advised at points that identity must be proved beyond a reasonable doubt. The clearest such instruction was its reference to

---

[12] The majority also notes the numerous references to the reasonable doubt standard made by the prosecution and defense counsel, *see ante* at **[3-4 & n.2, 12 n.5]**, implying that accurate statements of the law by counsel in summation might cure an otherwise constitutionally deficient jury instruction delivered by the trial court. While we have said that "challenged instructions must be viewed in context, [including] with respect to the entire trial record," *Gaines v. Kelly*, 202 F.3d 598, 606 (2d Cir. 2000), *see ante* at **[8]**, I do not believe we have ever suggested that an error in a court's reasonable doubt instruction may be rendered harmless by counsel's correct recitation of the law. Indeed, harmless-error analysis does not even apply to this type of error. *See Sullivan v. Louisiana*, 508 U.S. 275, 278-82 (1993). For this reason, as both parties agree and the majority does not appear to dispute, for purposes of the *Strickland* analysis "prejudice is presumed if a trial court gives an unconstitutional reasonable doubt instruction." Brief for Respondents-Appellees at 40 n.8 (citing *Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998)). Thus, I think it improper to suggest that accurate statements of the standard of proof by counsel might reduce to a permissible level the likelihood of confusion generated by a trial court's erroneous jury instructions.

[13] The court advises that the prosecution need not "establish the elements of the crime beyond all doubt," while also instructing the jurors to convict only if they are "fully convinced that a defendant is guilty."

21

New York's "one-witness identification rule." The court's instruction about the jury's "concern" may also be read to convey the proper burden. Although this instruction might have been delivered in a manner that adequately emphasized the proper standard for identity, what is clear even from the transcript is that this "concern" instruction separated the determination of identity from the determination of "the elements." Thus, I fear that its ameliorative force is much diminished when viewed in the context of the court's other instructions distinguishing facts from elements and treating identity as a fact. And in order to be found constitutionally deficient a jury charge need only create "a reasonable likelihood," not an absolute certainty, "that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard." *Victor*, 511 U.S. at 6. In my view, the "concern" instruction might have done as much harm as good.

Elsewhere, the court's instructions on the burden of proof refer to identity only implicitly, by advising that the prosecution must prove "a defendant's guilt beyond a reasonable doubt," and that the presumption of innocence remains "until you're convinced . . . beyond a reasonable doubt that one or both [sic] guilt has been proven beyond a reasonable doubt." *See People v. Newton*, 46 N.Y.2d 877, 879, 387 N.E.2d 612, 613 (1979) (mem.) (explaining that an instruction that the prosecution bears the burden of proving "a defendant's guilt beyond a reasonable doubt" may imply that this standard applies to the determination of identity).

I agree, of course, that repetition of the correct burden of proof "can render a charge adequate in its entirety, despite the inclusion of some objectionable language." *Shamsideen*, 511 F.3d at 347-48; *see, e.g.*, *Bunkley*, 68 F.3d at 1523 (affirming denial of habeas petition where

22

"inappropriate instruction was given only once" and "correct burden of proof was stated at least 31 times" and otherwise emphasized). Thus, in *Mullings v. Meachum*, 864 F.2d 13 (2d Cir. 1988), where, as here, "the primary issue before the jury was the identity of the robber," we held that despite an isolated instruction directing use of a preponderance standard for inferring even "ultimate facts," the jury charge as a whole adequately conveyed the proper burden of proof because with respect to the "critical issue" of identification the court instructed five times that it "must be proven beyond a reasonable doubt." *Id.* at 15-16; *see also Viafara-Rodriguez*, 729 F.2d at 914 (upholding burden of proof charge because "the Court emphasized that specific intent, which was the only seriously disputed element, 'must be proved beyond a reasonable doubt'").

But unlike the charge in *Mullings*, which sufficiently offset the improper burden instructed for unspecified "ultimate facts" by repeating five times the correct burden of proof for identity, 864 F.2d at 15-16, the charge at issue here expressly instructed that facts, including identity, may be found by a preponderance and provided the correct standard for identity only on two occasions.

At best, the court gave conflicting instructions on the standard applicable to identity. And none of the correct statements of the prosecution's burden "was styled as a 'curative' instruction that would alert the jurors that they should disregard the incorrect instruction." *Bloomer*, 162 F.3d at 194. Accordingly, I am unable to find that the isolated correct statements of the prosecution's burden "suffice to overcome the damage done by the . . . court's conflicting, incorrect instruction." *Id.*; *see also United States v. Birbal*, 62 F.3d 456, 460 (2d Cir. 1995) (holding that although court had correctly instructed "several sentences earlier" that the

23

defendants cannot be found "guilty unless the government has met its burden of proof," "[a]t best, these two conflicting instructions, when added to the deficiencies [previously] catalogued . . . , must have left the jury uncertain of the standard it was charged with applying" (brackets omitted)); *Callahan*, 605 F.2d at 75 ("Just as one allegedly erroneous instruction cannot be viewed in isolation when we attempt to determine whether a jury charge has deprived a defendant of his constitutional rights, neither can a few, isolated, partially correct statements, scattered among numerous misstatements of the law, be held to have undone the damage caused by a crucial, constitutionally infirm instruction, which infected the entire trial." (internal quotation marks omitted)).

The District Court held otherwise, reasoning that because the instructions here merely contained "a certain ambiguity as to the precise interaction between the preponderance burden and reasonable doubt burden," but were not "diametrically opposed" or "conflicting" as in *Birbal*, 62 F.3d 456, the instructions created only a slight risk of jury confusion that was overcome by the charge's numerous correct statements of the standard. *Brown III*, 2007 WL 3286638, at *5 n.7; *see also Shamsideen*, 511 F.3d at 349 (explaining that when a charge contains two "'irreconcilable'" instructions without indicating "which of these instructions was entitled to 'more weight,'" the Supreme Court has held that the correct instruction does not suffice to cure the deficiency (quoting *Francis v. Franklin*, 471 U.S. 307, 322-23 (1985))).

However the jury was expected to resolve this "certain ambiguity" with respect to finding the facts that constitute the robbery elements, the jury was advised to find the robbers' identity by a preponderance, an instruction that contradicts the requirement of proof beyond a reasonable

24

doubt that was elsewhere instructed. A jury charged with "conflicting instructions" must be "uncertain of the standard it was charged with applying. Such a jury, it goes without saying, was insufficiently prepared to carry out its constitutional mandate to resolve all reasonable doubts before adjudging the defendants guilty." *Birbal*, 62 F.3d at 460.

In concluding that this charge is constitutionally deficient and that the Appellate Division, First Department, unreasonably concluded otherwise, I am also persuaded by that court's opinions in *People v. Johnson*, 11 A.D.3d 224, 783 N.Y.S.2d 5 (1st Dep't 2004).[14] The *Johnson* Court explained at length the problems created by the trial court's "50.1 to 49.9" instructions. *See id.* at 226-27, 783 N.Y.S.2d at 8-9; *id.* at 229-30, 783 N.Y.S.2d at 10-11 (Saxe, J., concurring); *id.* at 227-28, 783 N.Y.S.2d at 9 (Tom, J.P., concurring).

The Appellate Division's rejection of Brown's appeal, however, implies that it found the two charges materially distinct and so perhaps had a reasonable basis for rejecting Brown's ineffective assistance of counsel claim.[15] Indeed, the Appellate Division has often found jury

---

[14] By referencing *Johnson* here I do not mean to suggest that Brown may satisfy the prejudice prong simply by showing that his conviction would have been overturned by the state court on direct appeal had his counsel objected to the charge and thereby enabled the appellate court to apply *Johnson*. Whether the Appellate Division would have reversed Johnson's conviction in the absence of a two-inference instruction, a question raised by the majority, *see ante* at **[14 n.9]**, is immaterial. "A federal habeas court is not bound to give effect to a mistaken interpretation of federal law," even if that mistaken interpretation would likely have produced a different result in the state proceeding. *Bunkley*, 68 F.3d at 1522. The constitutionality of the charge, rather, must be assessed under the proper federal standards. *See id.* at 1522-23. And in my view, the *Johnson* opinions, though not dispositive *ex proprio vigore*, provide persuasive confirmation of my conclusion that the charge in this case is constitutionally deficient.

[15] Although the Magistrate Judge suggested that the *Johnson*, 11 A.D.3d 224, and *Brown I*, 14 A.D.3d 356, decisions might be reconciled by the fact that the *Brown* court held "that the jury charge claim was unpreserved," *see Brown II*, 2007 WL 1379873, at *13 n.26, I note that the

25

charges to be constitutionally adequate despite the use of some of the "language that [it] disapproved in" *Johnson*. *People v. Henderson*, 50 A.D.3d 525, 525, 856 N.Y.S.2d 97, 98 (1st Dep't 2008); *see also* cases cited *supra* at **[7 n.5]**.

Respondents argue that the omission of the disfavored two-inference instruction from Brown's trial saves the charge from the deficiencies identified in *Johnson*. *See* Brief for Respondents-Appellees 28-31; *see also Brown III*, 2007 WL 3286638, at *6. I disagree. As Brown rightly points out, the two-inference charge, though "obviously correct as far as it goes," *United States v. Khan*, 821 F.2d 90, 93 (2d Cir. 1987), is discouraged on account of what it implies. *See* Reply Brief for Petitioner-Appellant at 13-14. One of its deleterious implications is its suggestion "that a preponderance of the evidence standard is relevant, when it is not." *Khan*, 821 F.2d at 93; *see also* 1 Hon. Leonard B. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS – CRIMINAL ¶ 4.01, Instr. 4-2, cmt. at 4-18 ("If the jury is properly charged as to both the presumption of innocence and the reasonable doubt standard, this instruction adds nothing to the charge and may serve only to confuse the jury as to the burden of proof."). The trial court here expressly instructed that very implication and wrongly made it applicable to the critical determination of identity. In my view, this charge is constitutionally deficient as is, and its omission of a two-inference charge does not render the contrary conclusion reasonable.

To be sure, we have found that a charge instructing, *inter alia*, that the jurors "need not find every fact beyond a reasonable doubt" became constitutionally deficient only "when

---

*Brown* court went on to state that "defendants received effective assistance of counsel," *Brown I*, 14 A.D.3d at 357, 789 N.Y.S.2d at 108, and Brown and Burwell predicated their ineffective assistance of counsel claims solely on the jury charge.

26

combined with the court's erroneous instruction that '[s]hould the prosecution fail to prove the guilt of a defendant beyond a reasonable doubt, you *may* acquit the defendant on the basis of the presumption of innocence.'" *Birbal*, 62 F.3d at 459, 462. In this case, I find that the court's preponderance instruction, when combined with its identification instructions, renders the charge constitutionally deficient.

Whether an instruction advising the jury to find facts by a standard of proof less than beyond a reasonable doubt passes constitutional muster necessarily depends on the particular language used and the totality of the charge.[16] In this case, I believe the court's preponderance

---

[16] I join with the majority in urging trial courts to use model jury instructions when applicable. *See ante* at **[15]**. Because "personal variations and needless departures from standard formulations" of the reasonable doubt instruction are at worst "prejudicial to a defendant," and "at best . . . needlessly [burdensome to] appellate courts while being of no real benefit to the jury," we have long encouraged district courts to use model jury instructions. *United States v. Ivic*, 700 F.2d 51, 69 (2d Cir. 1983) (internal quotation marks omitted), *overruled in part on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994); *see also Delibac*, 925 F.2d at 614. Although "we have no supervisory power over the state courts," *Victor*, 511 U.S. at 17; *see Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997), I note that the appellate courts of New York State share our view, *see, e.g., People v. Aponte*, 2 N.Y.3d 304, 309, 810 N.E.2d 899, 902 (2004) (reminding trial court "that criminal jury instructions generally are not fertile ground for innovation during trial" (internal quotation marks omitted)); *People v. Hill*, 52 A.D.3d 380, 382, 860 N.Y.S.2d 518, 521 (1st Dep't 2008) ("Although a trial judge is not obligated to use the standard jury instructions, this Court has stated each time a judge declines to employ the carefully thought-out measured tone of the standard jury charge in favor of improvised language, an additional risk of reversal and a new trial is created." (internal quotation marks omitted)); *People v. Chisolm*, 15 A.D.3d 154, 155, 789 N.Y.S.2d 21, 22 (1st Dep't 2005) ("[I]t would have been preferable for the court to employ the Criminal Jury Instructions."), *leave to appeal denied*, 4 N.Y.3d 884 (2005); *Johnson*, 11 A.D.3d at 227, 783 N.Y.S.2d at 9 ("The instant case compels us to admonish that elaboration and semantic variations on the theme of reasonable doubt that reduce the standard are error and cautious trial judges will continue to try to avoid using language that has met with disapproval by appellate courts."). The Court of Appeals has advised that "[t]he preferred phrasing to convey the concept and degree of reasonable doubt is illustrated in the Pattern Criminal Jury Instructions." *People v. Cubino*, 88 N.Y.2d 998, 1000, 648 N.Y.S.2d 868, 869 (1996) (mem.).

27

charge likely led the jury to think a guilty verdict could be returned on an insufficient standard of proof. Nor do I think it reasonable to deny this prospect of confusion. Accordingly, I would hold that Brown has established the prejudice element of his *Strickland* claim under AEDPA.

## C. *Strickland's Performance Prong*

With respect to the other component of Brown's *Strickland* claim, the question is whether it was unreasonable for the Appellate Division, First Department, to conclude that counsel's performance did not fall below an objective standard of reasonableness in light of prevailing professional norms. *See, e.g.*, *Cox v. Donnelly*, 387 F.3d 193, 198, 200-01 (2d Cir. 2004).

Counsel's conduct must be assessed "in light of the facts and law existing at the time." *Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004). And Brown must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks omitted).

However, "a strategic decision is a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." *Cox*, 387 F.3d at 198 (internal quotation marks omitted). "Where counsel, for no strategic reason, repeatedly fails to object to a clearly unconstitutional charge on the key issue in a criminal case, the rejection of an ineffectiveness

And counsel for respondents has acknowledged this preference for the model instructions. I further note that counsel for respondents also agreed to take up with her office our suggestion at argument that prosecutors be advised to oppose charges of this type. *Cf. Khan*, 821 F.2d at 93 ("[W]e expect the government, as well as defense counsel, to assume responsibility for bringing these comments to the attention of trial judges."). And as the majority notes, *ante* at **[12 n.6]**, the prosecution's interest in ensuring that juries are properly instructed extends beyond a shared concern for justice.

28

claim on that basis simply cannot be viewed as reasonable." *Id.* at 200; *see also Henry v. Scully*, 78 F.3d 51, 53 (2d Cir. 1996) (per curiam) (holding that counsel's failure to object "could not have been part of any meaningful defense strategy of which we can conceive," and "counsel should have" requested a missing witness charge "because there was no downside to doing so and there was a potential benefit to be gained"). And the right to effective assistance of counsel "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

The majority agrees with respondents' argument that counsel "could have reasonably concluded that the instructions in this case, viewed as a whole, properly conveyed the burden of proof." Brief for Respondents-Appellees at 19, 39; *see ante* at **[11-12]**. I reject this argument for the same reasons I found it unreasonable for the Appellate Division to conclude that the charge was constitutional.

Respondents further argue that counsel's performance was within the range of reasonably competent assistance at the time because he could not have predicted that the Appellate Division, more than two years after Brown's trial, would find a similar charge unconstitutional in *People v. Johnson*, 11 A.D.3d 224, 783 N.Y.S.2d 5 (1st Dep't 2004). *See* Brief for Respondents-Appellees at 21-22, 30-31, 37-40. Likewise, the majority contends that "*Johnson* should not be used as a basis to fault Brown's trial counsel." *Ante* at **[14 n.9]**.

Assessing "the state of the law as it existed at the time of [Brown's] trial," *Bloomer v. United States*, 162 F.3d 187, 193 (2d Cir. 1998), as provided in decisions of the Supreme Court and this Court and in New York law, I find that even before *Johnson* it was unreasonable for

29

counsel to fail to object to this jury charge.[17]

"Since *Winship*, few elements of due process have been clearer than the necessity of informing the jury that, to convict, it must find each defendant guilty beyond a reasonable doubt of every element charged." *United States v. Birbal*, 62 F.3d 456, 462-63 (2d Cir. 1995). The burden of proof beyond a reasonable doubt is "one of the most ancient and time-honored aspects of our criminal justice system." *Id.* at 457; *see also Victor v. Nebraska*, 511 U.S. 1, 5 (1994). This principle is "bedrock, axiomatic and elementary." *Francis v. Franklin*, 471 U.S. 307, 313 (1985) (internal quotation marks omitted); *cf. Gaines v. Kelly*, 202 F.3d 598, 604-05 (2d Cir. 2000) (holding that rule requiring that a state trial court's definition of reasonable doubt satisfy *Winship* applies retroactively because it is a "watershed rule of criminal procedure that alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding" (internal quotation marks and brackets omitted)). In 1990, well before Brown's 2002 trial, "the Supreme Court first held that a state trial court's definition of reasonable doubt violated constitutional due process." *Gaines*, 202 F.3d at 602 (citing *Cage v. Louisiana*, 498 U.S. 39

---

[17] As the Magistrate Judge observed, we have not consistently explained the precise degree of foreshadowing necessary to alert counsel that particular language will be found deficient. *See Brown II*, 2007 WL 1379873, at *26 & n.41; *compare Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("Generally, this Court has concluded that counsel's failure to object to a jury instruction (or to request an additional instruction) constitutes unreasonably deficient performance only when the trial court's instruction contained 'clear and previously identified errors.'" (quoting *Bloomer*, 162 F.3d at 193)), *with Bloomer*, 162 F.3d at 193 ("Although an attorney is not usually faulted for lacking the foresight to realize that a higher court will subsequently identify a defect in jury instructions similar to those used at his client's trial, an attorney nonetheless may be held responsible for failing to make such an objection when precedent supported a 'reasonable probability' that a higher court would rule in defendant's favor." (citations omitted)). Because I find that Brown satisfies the more stringent standard of a failure to object to a "clear and previously identified error," I need not address this issue further.

(1990) (per curiam), *overruled on another ground*, *Estelle v. McGuire*, 502 U.S. 62, 72 n. 4 (1991)). And in 1994, the Court explained that "trial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." *Victor*, 511 U.S. at 22.

By the time of Brown's trial, we had described an instruction advising the jury that not every fact must be found beyond a reasonable doubt as a "clear and previously identified error[]." *Bloomer*, 162 F.3d at 193; *see also Birbal*, 62 F.3d at 463 (explaining that identification of such an instruction as error in *United States v. Delibac*, 925 F.2d 610 (2d Cir. 1991) (per curiam), "certainly made [it] 'obvious' thereafter"). We have repeatedly characterized such an instruction as an "error[]," a "deficien[cy]," a "flaw[]," a "problem[]," and language that "should be avoided," *see Bloomer*, 162 F.3d at 190, 193; *Birbal*, 62 F.3d at 460, 462; *Delibac*, 925 F.2d at 614; *United States v. Gatzonis*, 805 F.2d 72, 73 (2d Cir. 1986) (per curiam); *see also* 1 Hon. Leonard B. Sand et al., MODERN FEDERAL JURY INSTRUCTIONS – CRIMINAL ¶ 4.01, Instr. 4-1, cmt. at 4-7 ("[C]ourts have admonished trial judges not to charge that 'separate bits of evidence' need not be proved beyond a reasonable doubt." (citing *Gatzonis*, 805 F.2d at 74)), even if not standing alone a constitutional deficiency. Indeed, Justice Saxe's concurring opinion in *Johnson* relies on our precedents. *See Johnson*, 11 A.D.3d 224, 229-30, 783 N.Y.S.2d 5, 11 (1st Dep't 2004) (Saxe, J., concurring); *cf. Larrea*, 368 F.3d at 183 (noting, in the course of holding that counsel cannot be faulted for failing to predict a New York Court of Appeals decision, that the decision had "cited only out-of-state decisions").

The requirement of proof beyond a reasonable doubt in a criminal case has long been a

31

feature of New York law and is codified in the State's Criminal Procedure Law. *See* N.Y. CRIM. PROC. LAW § 70.20 ("No conviction of an offense by verdict is valid unless based upon trial evidence which is legally sufficient and which establishes beyond a reasonable doubt every element of such offense and the defendant's commission thereof." (derived from N.Y. CODE CRIM. PROC. § 389 (1881) ("A defendant in a criminal action is presumed to be innocent, until the contrary be proved; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal.")). By statute, New York also requires trial courts to instruct juries on this "fundamental legal principle[]." *See id.* § 300.10[2] ("In its charge, the court must state the fundamental legal principles applicable to criminal cases in general. Such principles include, but are not limited to, . . . the requirement that guilt be proved beyond a reasonable doubt . . . ."). And New York law has long made clear that identification must be proven beyond a reasonable doubt. *See, e.g.*, *People v. Whalen*, 59 N.Y.2d 273, 279, 451 N.E.2d 212, 214 (1983); Criminal Jury Instructions New York, Reasonable Doubt (2d ed.), http://www.nycourts.gov/cji/1-General/CJI2d.Presumption.Burden.Reasonable_Doubt.pdf (last visited August 10, 2009) ("[T]he People must prove beyond a reasonable doubt every element of the crime including that the defendant is the person who committed that crime. . . . Proof of guilt beyond a reasonable doubt is proof that leaves you so firmly convinced of the defendant's guilt that you have no reasonable doubt of the existence of any element of the crime or of the defendant's identity as the person who committed the crime." (footnotes omitted)); *Id.*, Identification – One Witness.

By 1969, if not earlier, New York courts identified as error an instruction "charging the

jury in words which could have been understood as applying the preponderance of evidence rule rather than the requirement of guilt beyond a reasonable doubt." *People v. Rodriguez*, 32 A.D.2d 545, 545, 299 N.Y.S.2d 632, 633 (2d Dep't 1969), *appeal dismissed*, 25 N.Y.2d 785 (1969). And New York courts have long recognized that "[a]ny diminution of the People's duty to prove a defendant guilty beyond a reasonable doubt is unacceptable and improper." *People v. Bailey*, 121 A.D.2d 189, 190, 503 N.Y.S.2d 16, 17 (1st Dep't 1986) (holding that a charge instructing that "there must be a preponderance in order to establish guilt" "resulted in improperly diminishing the People's statutory burden of proving defendant guilty beyond a reasonable doubt"); *see, e.g.*, *People v. Cotto*, 28 A.D.2d 1116, 1117, 285 N.Y.S.2d 247, 250 (1st Dep't 1967) (holding that "the use of the words 'reasonable certainty' in the charge on reasonable doubt, depending on the content of the charge as a whole, may have a tendency to mislead or confuse the jury," and "were improperly used in the charge in the present case").

In light of the preceding authorities, I find that by 2002 it was outside the range of reasonably competent assistance to fail to object to a burden of proof instruction advising the use of the preponderance standard for factual findings such as the critical issue of identity. Because not every instruction that some facts may be found by proof less than beyond a reasonable doubt results in a constitutionally deficient charge, *see supra* at **[18]**, I acknowledge that counsel need not be faulted for failing to object immediately at the court's first mention of the "50.1 to 49.9" standard. Nevertheless, once such an improper instruction was given, counsel was obligated to pay close attention to the remainder of the charge to ensure that the proper standard was

33

adequately conveyed and to object because it was not.[18]  Although the instructions here were not as repeatedly erroneous as those at issue in *Cox*, 387 F.3d 193, the error went to "the key issue" in the case, *id.* at 200, and indeed, the key issue in *every* criminal case, *see, e.g.*, *Justice v. Hoke*, 45 F.3d 33, 35 (2d Cir. 1995) ("In all cases, the jury must resolve whether the evidence supports the factual propositions that the prosecution is attempting to prove beyond a reasonable doubt."). In the absence of a strategic reason (and respondents offer none), counsel's failure to object to this clearly unconstitutional charge "simply cannot be viewed as reasonable."  *Cox*, 387 F.3d at 200.  Accordingly, I would further hold that the Appellate Division unreasonably concluded that counsel's performance was not deficient. *See id.* at 200-01.

## CONCLUSION

The trial court's jury instructions should not have diminished the prosecution's burden of proving Brown's guilt beyond a reasonable doubt, and Brown's counsel was obligated to object when they did.  In my view, counsel's failure to do so was unreasonable, and so was the state court's rejection of Brown's claim.  For these reasons, I would reverse the judgment of the District Court and remand the case for the entry of judgment conditionally granting Brown the writ of habeas corpus.

---

[18] In my view, this is what our *Viafara-Rodriguez* line of cases signifies and not, as the majority suggests, that instructions advising the use of a preponderance standard are unobjectionable so long as they refer elsewhere to reasonable doubt. *See ante* at **[9-11]**.

34